VARGAS v. BLUE SEAL BOTTLING WORKS, LTD.

---

(March 10, 1930. Opinion and Decree.)

---

O. S. Livaudais and Frank W. Hart, of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. - The facts of this case are soon stated and are not in dispute, except in one regard, which, in view of the conclusion to which we have come, is of no importance, but to which we shall hereafter revert.

The suit is one sounding in damages for the loss of an eye. Plaintiff, Vargas, a resident of New Orleans, who was about to become interested in the selling of bottling machines, in company with William Burns, president of the Burns Bottling Works of Baltimore, and William T. Arrington, of Memphis, also interested in the sale of bottling machines, called at the office of defendant, a beverage bottling company, for the purpose of trying to sell to defendant company, through Mr. Baldenhofer, its president, a Burns bottling machine.

Mr. Baldenhofer advised the three visitors that only a short time prior thereto his company had purchased a bottling machine of another make, which machine was entirely satisfactory, and that therefore his company was not interested in the Burns machine.

Upon receiving this information, the visitors requested of Mr. Baldenhofer permission to remain and watch the other machine in operation; they, as manufacturers of competitive machines, being interested therein.

This permission was granted, and the three visitors, together with Mr. Baldenhofer, went into the bottling works proper, where Mr. Baldenhofer personally took charge of the operation of the bottling machine. The three visitors stood about eight or ten feet away and had watched its operation about five or ten minutes, when one of the bottles, after passing through the filling and carbonating and capping part of the machine, exploded after it reached the assembling table. A piece of glass, which had formerly been a part of the bottle which exploded, entered the eyeball of Vargas and so badly damaged it that its removal was necessary.

The petition alleges no specific act of negligence on the part of defendant company, and we are urged to hold that no such allegation of fact was necessary under the circumstances, because of the application of the doctrine of "res ipsa loquitur." This contention is, of course, based on the theory that the cause of the explosion was peculiarly within the knowledge of defendant's officers or employees; that plaintiff could not be expected to have knowledge of such cause; that the mere happening of such an accident raised a presumption of negligence and placed upon defendant the duty of overcoming that presumption and disproving the presence of negligence on its part.

It is maintained, on behalf of the defendant, that the doctrine of "res ipsa loquitur" is not applicable to cases of this kind generally, and particularly is not applicable to this case because of the fact that the three gentlemen in question, so far as the defendant knew, were thoroughly familiar with the operations of bottling machines in general, and that therefore Mr. Baldenhofer was justified in assuming that they were familiar with the fact that in bottling works it is impossible to prevent explosions of this kind, which occur in spite of the utmost care in the selection of bottles and in the operation of the plant.

Our attention is called to a number of cases in which various courts have held that the doctrine of "res ipsa loquitur" is not applicable in cases of this kind. Plaintiff has also cited cases which his counsel argue are in point and which, they contend, sustain their view that the doctrine of "res ipsa loquitur" is applicable.

We do not find it necessary to decide whether the doctrine contended for should be applied here, because, even if it be

conceded that the mere happening of the accident raised a presumption of negligence in the defendant—and that is the only result that flows from the operation of the doctrine—the defendant here has, in our judgment, successfully borne the burden of proving that there was no negligence on its part.

The doctrine of "res ipsa loquitur" does not create liability. Its sole effect is to create a presumption or inference of negligence, which shifts the burden of proof. As was said by the Supreme Court of the United States in Sweeney vs. Erving, 228 U. S. 233, 33 S. Ct. 416, 418, 57 L. Ed. 815, Ann. Cas. 1914D, 905:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions."

In order to sustain the burden which is placed upon it by the doctrine referred to, a defendant must show that it neither did anything it should not have done, nor left undone anything it should have done; that it neglected no duty owed by it to plaintiff.

In considering what duty was owed to plaintiff, it is apparent that the degree of care due him depends on the status occupied by plaintiff at the time of the accident. Manifestly he was not a trespasser, since he was present with the knowledge and permission of defendant's president. He was, then, either a licensee or an invitee.

He had come upon the premises for the purpose of trying to sell defendant a bottling machine, and thus his initial entry into the premises was, in some measure, for the benefit of both himself and defendant, and counsel for plaintiff cite the case of Plummer vs. Dill, 156 Mass. 426, 31 N.E. 128, 129, 32 Am. St. Rep. 463, and call our attention to the following, which appears therein:

"To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged. * * *"

We think that the interpretation which plaintiff contends should be placed on the second word "come" would give it a much narrower meaning than was intended by the author of the opinion from which we have quoted, and that the word should more properly be taken to mean "come and remain." Surely the fact that at some time in the past a person might have come upon the property on business in which the owner was interested does not constitute him an invitee, so long as he remains, unless his remaining is also, to some extent, for the benefit of the owner.

So long as the mission upon which he entered had not terminated, he was an invitee, but, upon the termination of that mission, his status as an invitee remained only for such reasonable time as might be necessary to give him an opportunity to leave the premises. In the present case Vargas did not leave, but sought and obtained permission to remain for a purpose which appears to us to have been in no

way in the interest or for the benefit of defendant. By no stretch of the imagination can it be said that his remaining in order to satisfy his own curiosity could benefit the defendant company.

The testimony of all of plaintiff's witnesses shows that, as testified to by Mr. Burns, when they asked Mr. Baldenhofer to allow them to remain to watch the machine in operation, "We were granted this permission."

In order to create the status of invitee, there must be to some extent a mutuality of interest. In Corpus Juris, vol. 37, verbum "License," p. 161, we find:

"A license implies permission or authority, and is more than mere sufferance, but it does not imply an invitation."

In Walker et al. vs. Nona Mills Co., 151 La. 738, 92 So. 318, 319, Walker was employed by a third party, Harris, to cart away certain slabs from the pile near the sawmill of the defendant. In order to reach this pile, it was necessary that he cross under the log conveyor, and, while so doing, he was killed by a log which fell from the conveyor. The Supreme Court of Louisiana said:

"Plaintiff's husband was at best a mere licensee. Defendant company was receiving no payment or other compensation from Harris for the permission which had been given him to take the slabs, and was deriving no profit or benefit therefrom."

Another case which we consider in point is Foshee vs. Grant, 152 La. 303, 93 So. 102, 103. In that case plaintiff, with certain friends, entered the premises of defendant for the purpose of purchasing drinks. For their own convenience they went into one of the rooms of the defendant, not intended for, but sometimes used by, patrons, and which was not a part of the saloon proper. They were served with beer, and while in the room plaintiff received injuries. The court said:

"In these circumstances and under the facts stated, it is clear that the plaintiff could not be considered in law an invitee in the wareroom, but he selected the occasion and took the circuitous route of his own accord in the hope that he might get the bucket of beer for his crowd with the least possible delay. Having entered the wareroom without invitation, expressed or implied, the defendant owed the plaintiff no greater duty than to see that he was not wantonly or purposely injured."

We do not consider Riecke vs. Anheuser-Busch Brewing Association, 206 Mo. App. 246, 227 S.W. 631, as being applicable, because in the Riecke case the plaintiff was invited to make a tour of inspection of the brewing plant and a guide was furnished for that purpose. Apparently this was one of the methods of advertisement adopted by defendant. It was thus in the interest of the defendant that visitors be shown over its plant. In Bennett vs. Railroad Co., 102 U. S. 577, 584, 26 L. Ed. 235, we find the following language:

"It is sometimes difficult to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' "

See, also, Jonosky vs. Northern Pac. Ry. Co., 57 Mont. 63, 187 P. 1014.

We find, in Petree vs. Davison-Paxon-Stokes Co., 30 Ga. App. 490, 118 S.E. 697, 698, that the doctrine is expressed as follows:

"A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and

who is permitted expressly or impliedly to go thereon merely for his own interest, convenience, or gratification."

The case of Bell vs. Houston & Southern Ry. Co., 132 La. 88, 60 So. 1029, 1030, 43 L.R.A. (N. S.) 740, does not appear to us to be apposite. There the person injured went to the station for the purpose of mailing a letter through a small slot in the side of the mail car. The court said:

"The sender or receiver of mail is the person to be served or benefited under or by that contract, and he is therefore indirectly interested therein, or connected therewith. The sender of mail has the undoubted right to deposit letters in the places designated by the government for the reception of mailing matter; and, where the sender of mail goes to a mail car and deposits his mail with the clerk or officer placed in said car to receive mail, he is transacting business with the agent or agency * * * for the transmission of mail. In this instance, the defendants were the instrumentalities used by the government for conveying mail from one place to another; and they were obliged, under their contract with the government, not only to provide a mail car and carry the mail and mail clerks in charge of the mail, but also to give safe passage of ingress to and egress from their train and the mailing clerks stationed in the mail car."

For these reasons we are of the opinion that Vargas had lost his original status of invitee and remained upon the premises by the mere sufferance of Baldenhofer, and was therefore a licensee when he received his injuries.

The only duty owed to a licensee by the owner of the premises is that he shall not wantonly or purposely injure him. He takes the premises as he finds them.

In Glaser vs. Rothschild, 221 Mo. 180, 120 S.W. 1, 2, 22 L.R.A. (N. S.) 1045, 17 Ann. Cas. 576, we find the following:

"The general rule is that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier. Hargreaves v. Deacon, 25 Mich. 5; Benson v. Baltimore Traction Co., 77 Md. 535, 26 A. 973, 20 L.R.A. 714, 39 Am. St. Rep. 436; B. & O., etc., R.R. Co. v. Slaughter, 167 Ind. 330, 79 N.E. 186, 7 L.R.A. (N.S.) 597, 119 Am. St. Rep. 503, and cases cited. See, also arguendo, O'Brien v. Steel Co., 100 Mo. 182, 13 S.W. 402, 18 Am. St. Rep. 536, and Glaser v. Rothschild, 106 Mo. App. 418, 80 S.W. 332; Kelly v. Benas, 217 Mo. 1, 116 S.W. 559 (20 L.R.A. (N.S.) 903). A bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them. * * * Mere permission, without more, involves 'leave and license,' but bestows no right to care. If A. gives B. leave to hunt mushrooms for his table in A.'s field, and B. fall into a ditch or uncovered pit, and is harmed, no duty was raised, no breach is made, and hence no action lies. As put by way of illustration in the books, suppose A. owns a sea view, a cliff, and gives B. permission to walk on the edge of the cliff for pleasure or air, it would be absurd to contend that such leave cast on A. the burden of fencing the cliff to keep B. from falling off."

Surely it cannot be said that the owner here failed in any duty it owed to Vargas as a licensee. There was no defect in the premises; there was no defect in the bottling machine; there was no negligence in its operation; the bottles were purchased from a reputable concern and were inspected before being put into use and again as they were passing through the bottling machine. The defendant complied with its full duty.

But, even if it be conceded that the status of Vargas was that of invitee, we do not think that, under the facts as they appear in the record, any liability could be fastened upon the defendant.

The only question of fact which is in any way in controversy is whether or not

the bottle in question fell over as the result of a defective bottom and broke as the result of the fall, or exploded as the result of an inherent latent defect.

The record shows that in the best regulated plants such explosions occur with considerable frequency, as the result of latent weakness in the bottles. In fact it is testified that it is impossible to manufacture bottles which will not contain latent, undicoverable defects, and that, for this reason, manufacturing plants allow an average of 2 per cent. in bottles of this character. This means that they realize that two in every one hundred bottles will contain such defects as cannot be discovered by examination or test. In view of this fact, we are not inclined to place much reliance on the statement of Arrington that he saw the bottle fall over, and that then the explosion occurred, because, in fact, if he saw the bottle fall, he would certainly have told Vargas about it before the suit was filed, and, if he had told Vargas, the petition would not have contained the allegation that the cause of the explosion was unknown, for it is evident that the cause, under those circumstances, would have been the falling of the bottle, and Vargas would have alleged that the bottle exploded as the result of the fall and that the fall was caused by negligence of the employees in failing to detect a defect. The owner of the premises is not the insurer of the safety even of the invitee. He is bound to take such precautions as lie within his power to prevent the injury, and the record convinces us that the defendant took such precautions in this instance.

The trial court was of the opinion that defendant was not liable, and in this view we concur.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.