YOUNSE v. SOUTHERN ADVANCE BAG
& PAPER CO., Inc., et al.
No. 4864.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1935.

Elder & Elder, of Ruston, for appellants.

J. Norman Coon, of Monroe, for appellee.

DREW, Judge.

Plaintiff set out for a cause of action the following allegations of fact in his suit for damages in the sum of $15,000:

"6. That on Wednesday, August 2, 1933, while your petitioner was employed by C. A. Culpepper, resident of Jackson Parish, Louisiana, and was employed to drive a truck in connection with the hauling of pulp timber from Allen Jones' place near Weston, Jackson Parish, Louisiana, to the plant of the Southern Advance Bag & Paper Company, Incorporated, at Hodge, Louisiana, where it was there sold and delivered.

"7. Your petitioner further says that while in the course of his employment, while actually performing and discharging his duties as such, he was driving a 1930 year model Chevrolet truck, owned by C. A. Culpepper, loaded with pine pulp timber, and that he drove the said truck through the gate at the wood yard of said plant, and onto the wood yard, where he stopped the truck and, as was customary, allowed an employee of said Southern Advance Bag & Paper Company, Incorporated, to scale the load.

"8. Petitioner further shows that after the load of pulp timber was scaled, he was instructed by W. S. Hackett, the chief wood scaler of the said Southern Advance Bag & Paper Company, Incorporated, to drive said truck to a wood stacker some distance away, and on the said paper company's said wood yard, which particular wood stacker was customarily used in the unloading of pine pulp timber, and that the said orders were given by said W. S. Hackett while he was

employed by the Southern Advance Bag & Paper Company, Incorporated, while he was working for said company, in the course of his employment, and actively engaged in the performance of his duties as such, and that your petitioner complied with the request and drove said truck to the said stacker, as ordered to do.

"9. Petitioner now shows that the wood stacker consisted of a huge trunklike vesticle and a chain which revolved in and out of said trough, picking up the pulp timber which was dumped into said trough and carrying same out to various places in the wood yard. Petitioner further shows that said wood stacker was operated and run by an electric motor, which was located beneath the trough of said wood stacker.

"10. Petitioner now shows that when he had stopped said truck at the said stacker and had gotten off of the truck and on to the ground on the left hand side, which was the side where the wood stacker was located, that at that time said W. S. Hackett, who had scaled the wood on said truck and had followed the direction of said truck, walked up to the rear of said truck and further requested that petitioner start the said electric motor which would, in turn, run the said wood stacker.

"11. Petitioner now shows that the said electrical motor has attached to it in some way an iron lever, about 12 inches or more in length, which was used as a switch to start the electric motor, and that the said electric motor and wood stacker were customarily started and operated by the pushing of said lever to one side and then back to the other.

"12. Petitioner further shows that in complying with the request of the said W. S. Hackett, he walked from his truck a few paces to where the said iron lever was located near the electric motor; that he put both of his hands to the lever, preparatory to and as a part of the method of starting the said engine, and the attachment which controlled the wood stacker; that the insant he touched the said iron lever, it immediately seized his hands by the electricity with which the lever was charged, and that the said lever was charged with the full voltage of the current carried on the wire and connected with the electric engine, and said iron lever, which was 520 volts; and that said accident occurred about 10:20 o'clock A. M. on the day and date above mentioned.

"13. Petitioner now shows that he was seized and held to the said electrically charged iron lever for some time, until a switch wire, or wires, or some other kind of connected wiring burned completely out; and this caused the circuit to be cut off from the said iron lever; and this, in turn, released petitioner and he consequently fell to the ground.

"Petitioner further shows that the alleged current held him taut to the iron lever for a minute or more, and that during all of this time his body was being charged with a terrible amount of electricity; that the force of said electric current was so tremendous that it caused his head to be drawn back as far as it could be, toward his spine. It blistered and burned both of his hands severely, and that he was rendered unconscious by the deathlike blow of said voltage of electric current. * * *

"15. Petitioner now shows that the Southern Advance Bag & Paper Company, Incorporated, was grossly negligent and that it was using and allowing to be used defective machinery, and particularly, by using an uncovered iron lever connected with an electric switch without having said iron lever covered with some kind of insulated material, such as wood, cork, rubber, or other kinds of material; that said company was negligent by not having said machinery regularly and daily inspected to see if the wires, ground wires and all the wires connected with the electrical current were in good running condition, and out of danger for people to use the same; that said company was grossly negligent in that it had previous knowledge that said machinery was defective, and that it had notice that its employees and other people had been shocked by said iron lever connected with said switch and electric engine; that notwithstanding said previous notices to the company by various individuals, it failed to heed the warning, failed to repair the machinery or replace it with standard and efficient machinery which, if it had done so, would have prevented the accident in this case; that said company was negligent in that it did not keep employed and on the job an electrician or some other qualified employee to operate the said iron lever, switch and electric motor and wood stacker; that said company was grossly negligent and careless by allowing said machinery to create a deathlike trap for your petitioner, without having placed on the machinery, or having given any kind of notice, warning your petitioner of the hidden danger attached to said machinery; that said company and said W. S. Hackett were grossly negligent in that they

invited your petitioner and further requested that he operate said defective and dangerous machinery, and especially in view of the fact that they had previous notice of said danger and defective machinery.

"16. Petitioner further shows that in order for him to work for the said C. A. Culpepper in the driving of said truck and the unloading of said wood, it was necessary for him to carry out the orders of the said W. S. Hackett and of the said Southern Advance Bag & Paper Company, Incorporated; that in order for him to pursue his occupation, it was necessary and incumbent upon him that he carry out their orders in connection with the unloading of said wood, as is above described, and of the operation or attempt to operate said machinery as heretofore mentioned; and that it was not voluntary on his part that he attempted to operate said machinery; that he was compelled to do, or attempt to do, by the express and implied orders of the said W. S. Hackett and the Southern Advance Bag & Paper Company, Incorporated, in order to carry on the duties of his occupation.

"17. Petitioner further shows that the Southern Advance Bag & Paper Company, Incorporated, is legally responsible and liable for damages for the wrongful acts of its agent, W. S. Hackett, and for its own negligence; and that both of the defendants should be held liable in solido, and pay your petitioner the amount of said damages for all injuries received or to be received, that might be attributable thereto, or that have or may naturally flow therefrom."

He then set out the injuries he had received, itemized his alleged damages, and prayed for judgment in solido against both defendants.

Defendants answered the petition and in their answer admit the Southern Advance Bag & Paper Company, Inc., had entered into a contract with C. A. Culpepper to haul, deliver, and sell to it, for a specified price per cord, pulp wood, and that the said Culpepper did, through his employees, deliver pulp wood on the date alleged by plaintiff; and further alleged that C. A. Culpepper was an independent contractor.

Defendants admit that on the date alleged plaintiff did bring a load of pulp wood to the property of defendant Southern Advance Bag & Paper Company, Inc., drive a truck into the wood yard and permit the scaling of said wood, as alleged by plaintiff. They further admit that after the pulp wood had been scaled, W. S. Hackett, the chief

wood scaler of said Bag & Paper Company, instructed plaintiff to drive his truck to a wood stacker on said paper company's property, which wood stacker was customarily used in unloading pulp wood, and that said orders were given by W. S. Hackett while he was employed by the Southern Advance Bag & Paper Company, Inc., and while he was working for said company in the course of his employment and actively engaged in the performance of his duties as such; and that his orders were complied with by plaintiff.

Defendants further admit the wood stacker was as it is described in plaintiff's petition, and that it had to be started as alleged by plaintiff. They deny that Hackett instructed plaintiff to start the electric motor, which would in turn run the said wood stacker. They admit plaintiff attempted to start the electric motor and received an electric shock, but deny he was requested to do so by any one. Defendants admit plaintiff fell to the ground after releasing himself from the lever and that he received first aid treatment at the office of the defendant company, averring that his injuries were to his hands only and consisted of minor burns. They deny any acts of negligence on their part, and deny it was incumbent upon plaintiff to carry out the orders of Hackett in order to deliver wood to defendant paper company's plant, but admit it was customary for the employees of defendant paper company to indicate to wood haulers the particular wood conveyor on which said pulp wood was to be placed, and specially deny that such wood haulers are required by any contract with defendant, or by any contract between defendant and any third person, to manipulate the switch to said electric motor.

Defendants further allege that plaintiff has grossly exaggerated his condition, and that prior to the accident, plaintiff had some kind of abrasion on his hand and after the shock it became infected and spread to other parts of his body. They further allege that soon after plaintiff received first aid treatment he returned to work and worked for days.

The answer was filed on September 23, 1933; trial on the merits was concluded November 29, 1933, and on December 22, 1933, before a decision was rendered by the court, defendants filed an exception of no cause or right of action. The minutes do not disclose that the exception was ever tried or ruled on. At the beginning of the trial on the merits, defendants objected to the introduction of any evidence for the reason that plaintiff's petition failed to

disclose a legal cause or right of action. The testimony was admitted subject to the objection, to which ruling defendants excepted and reserved a bill of exception.·

After trial had, the lower court rendered judgment in favor of plaintiff and against the Southern Advance Bag & Paper Company, Inc., in the sum of $2,500 and rejected plaintiff's demands against W. S. Hackett. Defendant Southern Advance Bag & Paper Company, Inc., appealed to this court and the record was properly lodged here. At a later date, plaintiff appealed from the judgment in so far as it rejected his demands against defendant Hackett, and the record was lodged here and bears a different number from the case against the Southern Advance Bag & Paper Company, Inc.

■ Defendants did not file the exception of no cause or right of action prior to going to trial. However, they did make an objection at the beginning of the trial, which was equivalent to an exception of no cause of action, by timely objection to any testimony in support of the petition, and they were entitled to a ruling thereon. When the lower court admitted the testimony, subject to the objection, it in effect amounted to overruling the objection, which was an exception of no cause of action, for the reason that the defendants had a right to have the objection or exception of no cause of action passed upon, on the record as made at the · time the objection was made. In this instance, the objection, which is equivalent to an exception of no cause of action, is to be passed upon on the allegations in the petition and the admissions in the answer. The same exception was filed in this court, but this last exception would have to be passed upon as the record is made up in this court. The objection to the introduction of any testimony was based on the contention that plaintiff did not allege that W. S. Hackett was acting within the course and scope of his employment at the time plaintiff alleged he was ordered or requested by Hackett to start the electric motor.

In paragraph 8 of plaintiff's petition, he alleged: "Petitioner further shows that after the load of pulp timber was scaled, he was instructed by W. S. Hackett, the chief wood scaler of the said Southern Advance Bag & Paper Company, Incorporated, to drive said truck to a wood stacker some distance away, and on the said paper company's said wood yard, which particular wood stacker was customarily used in the unloading of pine pulp timber, and that the said orders were given by said W. S. Hackett while he was employed by the Southern Advance Bag & Paper Company, Incorporated, while he was working for said company, in the course of his employment, and actively engaged in the performance of his duties as such, and that your petitioner complied with the request and drove said truck to the said stacker, as ordered to do."

This paragraph is admitted to be true by defendants in answer. Paragraph 8 is followed by paragraph 9 of the petition, in which a description of the wood stacker is given, and which is also admitted as true by defendants. Then in paragraph 10, plaintiff alleged: "Petitioner now shows that when he had stopped said truck at the said stacker and had gotten off of the truck and on to the ground on the left hand side, which was the side where the wood stacker was located, that at that time said W. S. Hackett, who had scaled the wood on said truck and had·followed the direction of said truck, walked up to the rear of said truck and further requested that petitioner start the said electric motor which would, in turn, run the said wood stacker."

■ Articles 8 and 10 of the petition are a narrative of what happened between plaintiff and Hackett and describe one continuous act. It is to be noted that plaintiff alleged Hackett further requested him to start the motor. It would be a very narrow construction to put on the petition to hold that plaintiff alleged Hackett was acting within the course and scope of his employment from the time plaintiff first came in contact with him up to the very time he is alleged to have requested plaintiff to start the motor (which defendant admits to be true), and that the petition did not allege he was continuing to act within the scope and course of his employment when he requested plaintiff to start the motor. The allegations in the petition describe a continuous act from the entry into the wood yard until the accident occurred, and allege that each and every thing done by plaintiff during that time was by instructions from Hackett, an employee of defendant company, acting within the course and scope of his employment. The petition sets forth a cause and right of action, and the objection was properly overruled. It, of course, follows that the like exception in this court will be overruled, for the record as made up here clearly discloses that Hackett was acting within the course and scope of his employment in all matters between him and plaintiff on the day of the accident.

The first contested question · of fact is whether or not W. S. Hackett, who was the foreman in charge of the wood yard, ordered plaintiff to start the electric motor which in turn would start the wood stacker. It is admitted that after the wood had been scaled and plaintiff directed by Hackett to unload it at the second wood stacker, Hackett followed the truck to the stacker, which at the time was not running and had not been for several days. Plaintiff testified that when he alighted from his truck, he was told by Hackett to start the electric motor. Mr. Hackett testified, when placed on the stand by his own counsel, as follows:

"Q. You let them start the stackers then if they wanted to and knew how? A. Yes, I never commanded them, I showed them how and they started it in that way. * * * I scaled his load of wood. He went on down to the stacker and just after he started down there I started on after the truck. I don't know why I went down there as I don't usually go down there to the stackers. He got off the truck and went toward the switch and he indicated to me whether or not he was to start it and I said for him to go ahead. Then I walked around the truck and saw him and I just supposed he didn't know how to start it and before I could get there he got loose from it some way, I don't know how. * * *

"Q. Then, Mr. Hackett, before Younse attempted to start the motor which was necessary that it had to be started in order for him to unload the wood, he motioned to you for your consent or disapproval as to whether or not he should start the motor? A. He just held up his hand, I don't remember just what I said, I think I said,—'Go ahead and start it if you know how.'

"Q. In some words you told him to start the motor? A. I gave my consent, I didn't command him to start it.

"Q. The motor had to be started in order for him to get the wood unloaded? A. Yes, sir."

Mr. Culpepper, who was present, testified to an entirely different state of facts, but the least said about his testimony, we think, the better, for he was so completely contradicted by all other witnesses. We are sure plaintiff was either ordered to start the motor or requested to start it, or the least that can be said is that he had the full permission of Hackett to start it. Furthermore, it is very evident that the motor had to be started by some one in order for the wood to be unloaded and stacked, and there was no other employee of defendant paper company there to start it. The record further shows, by an overwhelming preponderance of testimony, that the paper company did not keep an electrician or any other employee in the wood yard to start the motor, and that prior to and up until the time of the accident, the wood haulers started and stopped the motor; in fact, it was necessary that they do so in order to unload the wood they brought to the wood yard. This was done with the full consent and acquiescence of the defendant paper company, if not by its direct orders, by its implied orders. We therefore find that when plaintiff attempted to start the electric motor on the day of the accident, he did that which he was authorized to do by the defendant paper company, through its employee, Hackett, who was acting within the course and scope of his employment, and that plaintiff was performing a duty which was of mutual benefit to the defendant paper company and himself.

Plaintiff was employed by a third person to haul and deliver pulp wood to the defendant paper company's wood yard for delivery to said paper company. He was required by said paper company to unload the wood at a place designated by it and in the manner it directed him to unload it. He was doing this at the time. He was not a trespasser on defendant paper company's property at any time after he had entered its premises or until he had completed his mission there and gone. He was not a licensee there for the reason that what he did there was for the mutual benefit of himself and said paper company. He was not there for pleasure nor for the benefit of himself alone. He was, in fact, an invitee. Vargas v. Blue Seal Bottling Works, 12 La. App. 652, 126 So. 707; Myers v. Gulf Public Service Corporation, 15 La. App. 589, 132 So. 416; 44 A. L. R. 982, 987, 989, note.

█ It therefore follows that the defendant paper company is liable in damages to plaintiff if he was injured while on the defendant's premises and in the discharge of the duties which carried him there, if his injuries were due to or brought about by the negligence of defendant paper company.

The injuries received by plaintiff were caused from burns and the shock he received when he placed his hands on the iron lever for the purpose of starting the electric motor, at which time there was sent through his body 550 volts of electricity, alternating current. It is admitted on trial that the electric motor was defective and not grounded

at the time, and that if it had been properly grounded, plaintiff could not have received the burns and shock. The cause of the shortage in the iron lever is shown to have been due to the following: It had been raining for several days prior to the accident. The rains were unusually heavy and rainwater was blown in about the starter of the motor, which water leaked down into the oil pan around the starter, creating a short circuit. Water being a conductor of electricity, it allowed the same to be conducted around the entire ·metal frame of the compensator, or starter, and into the iron lever used to start the motor. It is also shown by defendant paper company's chief electrician, who repaired the motor, that the ground wire attached to the compensator was broken and disconnected and a new wire was immediately put in its place, the oil pan drained and dried, and new oil put in it. The condition the electric motor was in at the time of the accident made it a very dangerous object and there was nothing about it at the time to indicate that fact. In appearance it was the same as it had been on the days before when plaintiff and other truck drivers had started it. The head electrician for defendant paper company testified that he knew the water in the oil pan would cause a short circuit, and that he had had trouble with other motors of defendant company on account of said rainwater prior to this time, in fact, that defendant company entirely lost two motors on account of it. It is further shown that this particular motor had not been started in several days, due to the unusually heavy rains which prevented the wood haulers from delivering wood, and with this knowledge no inspection of any kind was made of this motor after the rains and before it was again allowed to be used. This alone convicts defendant paper company of the grossest of negligence. Furthermore, it is clearly shown that there was no regular inspection made of the condition of this motor prior to the accident; that on the days it was raining, a man employed by the company as an oiler would oil the motor once or twice a day. He was not an electrician, and the only inspection of the motor he would make was to touch it and ascertain if he were going to get shocked, or possibly killed. There was never any inspection of the ground wire nor of the oil pan to see if they contained water.

■ Under the facts shown in the case, defendant paper company did not, prior to the accident, inspect the motor or maintain any system of inspection, as is required by law of one operating a business where the dangerous agency, electricity, is used. The very highest degree of care practicable to avoid injury to every one is required of those who make use of such a dangerous agency in their business. This is due to the fact that electricity gives no warning or knowledge of its deadly presence. Vision cannot detect it as it is without color, body, is odorless and without sound, and the only way to discover it is by feeling, communicated through touch (the system used by the oiler), which, as soon as done, makes the one who touches it its victim. It was the duty of defendant paper company to maintain constant vigilance in inspecting and keeping this electric motor in perfect condition. Potts v. Shreveport Belt Railway Company, 110 La. 1, 34 So. 103, 98 Am. St. Rep. 452.

■ The defendant paper company did not do this and is therefore liable for any damages caused to plaintiff by this negligence.

■ W. S. Hackett was made defendant herein and judgment prayed for against him, in solido, with the other defendant. The lower court rejected plaintiff's demands against Hackett and the judgment is correct. There was no negligence on the part of Hackett. He was performing the duty which he was employed to perform. He was not an electrician and was not charged with the duty of inspecting and maintaining the motor in a safe and perfect condition. His duties required him to have the motor operated only. There was no negligence on his part in ordering or granting permission to plaintiff to start the motor. The attempt to start the motor was not the proximate cause of the accident. It was the defective motor itself which caused the damage and only those responsible for the defects existing or remaining in the motor, because of failure to have same inspected, are liable for damages caused.

Plaintiff was awarded $2,500 by the court below against the Southern Advance Bag & Paper Company, Inc. He has answered the appeal praying that the amount of the award be increased to the full amount sued for.

When the 550 volts of electricity went into plaintiff's body, he was for a short time unable to release the lever. During that time his head was drawn back as far as it was possible for it to go. When he did release himself from the lever, he fell to the ground and was picked up by Mr. Hackett and Mr. Culpepper and assisted to the office of the defendant company where he remained a short time, then was sent to the first aid room of the defendant company and his hands

bathed and bandaged. Plaintiff then came back to the truck and departed on it, with Mr. Culpepper driving. Both of plaintiff's hands were burned in the palms. He attempted to work for two, or possibly three, days afterwards, but was forced to cease. The work he attempted to do during the two or three days was driving the truck, but had little success in doing so. He made no attempt to load or unload the truck. Since that time, he has been unable to perform work of any kind. His nervous system is upset to such an extent that he has difficulty in sleeping and each night is forced to take Amitol' tablets before he can get any rest. He is forced to arise each night several times for the purpose of urination. He is irritable and easily excited. The accident occurred on August 2, 1933, and the case was tried below on November 28, 1933, practically four months after the date of the accident. Ten or twelve days after the accident plaintiff was examined by Dr. Coon, who stated that he made the following complaint on that occasion:

"A. Well, noticeably, he complained of burned hands, both hands, he had second degree burns and he complained of pain especially in his back, in his upper right extremity and shoulder, right side of his neck, his head and lower extremities, and a little more marked on the right side of his lower extremities. He also said his right arm was weak and that he didn't have the strength he had had.

"Q. Have you examined the plaintiff to determine whether or not he has analgesia, or insensibility to pain? A. Yes, I have."

Possibly at that time, if not at a later examination, the doctor found that plaintiff had analgesia, or insensibility to pain, such as a pin prick, in the upper right arm, right shoulder, and right side of the neck, and a slight analgesic condition of the lower right extremity as high up as the knee. This condition was also found by three other doctors and existed up to the date of trial, with no improvement. In walking, plaintiff drooped to the right side, or easily tired. He also suffered from severe headaches and one eye is somewhat impaired. His condition was caused by the shock he received and is strictly an injury to his nervous system.

Plaintiff has suffered a great deal of pain. There is no prescribed treatment for his condition. The only aid is something to relieve pain and nervousness. He was disabled from working at the time of trial, and only time can tell whether he will recover, however, the record discloses that most cases of this kind do fully recover. Before the accident, plaintiff was in a good state of health. He is twenty-six years of age, married, and has two children. He is uneducated and at the time of the accident was earning $1.50 per day. Several years prior to the accident, he received $90 per month. Under the circumstances, we think the award made by the lower court inadequate, and that same should be increased to the sum of $4,000.

It therefore follows that the judgment of the lower court in favor of plaintiff and against defendant Southern Advance Bag & Paper Company, Inc., is amended by increasing the amount of the award from $2,500 to $4,000, and, as amended, the judgment of the lower court is affirmed, with costs.