[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 272 
This is a tort action in which plaintiffs, as the mother and father of their minor son, Earl Mercer, seek to recover damages for injuries suffered by their said son while on premises belonging to the defendant railway company.
On October 1, 1941, Earl Mercer, a 16-year-old boy, weighing about 95 pounds, employed by the Winn Parish Printing Company, publishers of the Winn Parish Enterprise, made a call at the shop office of the Tremont Gulf Railway Company located in Winnfield, Louisiana. The established purpose of the boy's visit was to solicit a subscription for space in football ads to be published in the Winn Parish Enterprise. This was in line with the boy's employment as collector and advertising salesman. It was his intention to solicit the advertising from Mr. Jesse Corley, with whom he was acquainted and with whom he had previously done some business, not, however, in the nature of advertising. Mr. Corley was superintendent of motor cars in the employ of the defendant company. It is established that Corley had no authority to contract for advertising space on behalf of the defendant company, but it was also established that young Mercer did not know this fact at the time he made the call for the purpose set forth.
Arriving at the shop office, Mercer found that Mr. Corley was engaged, and stepped outside of the office to await an opportunity to speak to him. At this point there is a conflict of testimony, which is emphasized in briefs of defendant's counsel. Mercer testified that he was told by a man in the office, whom he assumed to be an employee of the company, to step outside and wait until Mr. Corley was at leisure. However, Mercer could not identify this *Page 273 
individual, did not recognize him to be any one of eleven employees of the defendant company who appeared at the trial, nor could he remember ever having seen the man in question before or since the occasion of which he testified.
It appears that the passageway to the shop office of defendant company leads from the entrance to the company's premises, where "No Trespassing" signs are prominently posted, by means of a well-defined and much-used trail or pathway to the building in which the shop office is maintained. Immediately adjacent to the office, abutting on the trail, there is a substantial platform constructed of heavy timber, upon which the company has been accustomed to stack spare car wheels of varying weights, running from 700 to 900 pounds each. The method of stacking the wheels is shown to be the method commonly employed by defendant and other railway companies. At the back of the platform there is a heavy timber backstop and against this the first two wheels, upon being unloaded upon the platform, are leaned, which wheels are fixed in place by means of a 4x4, or some similar piece of timber, which is driven through the axle holes of the wheels. Additional wheels are then stacked against the first two, each wheel leaning toward the backstop of the platform. The wheels are arranged in rows by weight, and, as need arises, they are easily handled by means of a small hand-truck operated by an employee, who runs the truck up to the wheel and tilts the wheel over upon the truck.
There can be no question but that the method of stacking wheels upon the platform was adopted by the defendant company in the interest of its own convenience, and for the purpose of facilitating the handling of these heavy wheels.
Mercer's testimony is to the effect that while waiting for Mr. Corley, he stood by one of the rows of wheels examining a file of papers which comprised his advertising layout. Suddenly, and without warning, one of the wheels in the row by which he was standing fell upon his left leg, just above the knee, pinning him to the ground, and a second wheel fell upon the top of the first. The accident caused a fracture of the left leg and thigh, necessitating two separate periods of hospitalization and a long course of treatment. Damages amounting to $23,050 were claimed by plaintiffs, and after trial there was judgment in favor of plaintiffs in the sum of $2,000. Plaintiffs represent themselves as being satisfied with the amount of the judgment, in view of the fact that the injuries sustained did not have the serious and permanent results which were anticipated at the time of filing the suit. From the judgment defendant appeals.
An exception of no cause of action was filed by defendant directed at the point that plaintiffs' petition failed to allege all of the essential elements of duty, breach of duty, and, injury, in that, while injury was alleged, neither duty nor breach of duty were sufficiently set up. The exception was overruled by the trial Court, which ruling we find to be correct.
An examination of plaintiffs' petition discloses the allegations that the wheels fell without any fault or negligence on the part of the injured youth; that the injuries suffered as the result were directly attributable to the gross fault and negligence of the defendant; that the accident came under the doctrine of res ipsa loquitur; that the path was used by the general public to the knowledge of defendant, which amounted to an invitation, and that at the time of the accident it was being used by Earl Mercer at the suggestion of agents or employees of the company, and without warning as to the dangerous condition of the path by reason of its immediate proximity to the stacks of car wheels.
Other allegations of the petition, to which we do not find it necessary to call attention in detail, add to the ones above noted, and, in our opinion, plaintiffs' petition is amply sufficient to state a cause of action.
The points urged on behalf of defendant in brief on the exception of no cause of action are emphasized and reiterated in the briefs and arguments on the merits, and are unquestionably the decisive factors of the case. Since these questions of law are fully covered in this opinion, and since they are applicable to the exception, as well as to the merits, we see no need for elaborating our reasons for agreement with the ruling of the exception.
The doctrine of res ipsa loquitur is the doctrine invoked in aid of a plaintiff in instances where the occurrence of the accident itself serves to make out a prima facie case of negligence on the part of a defendant. When the circumstances *Page 274 
surrounding the accident indicate that such accident would not ordinarily occur without some particular act of omission or commission on the part of a defendant, the mere fact that the accident took place is sufficient to create a presumption of negligence. The theory of the doctrine is intended to protect the rights of an injured person under circumstances surrounding the happening of an accident which leave the cause thereof unknown to the injured party. The law then presumes the superior knowledge on the part of the owner, possessor or operator of the instrumentality causing the injury. Jones v. Shell Petroleum Corp., 185 La. 1067, 171 So. 447; Loprestie v. Roy Motors, Inc.,191 La. 239, 185 So. 11; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158; Rome v. London Lancashire Indemnity Co. of America, La.App., 169 So. 132; Gershner v. Gulf Refining Co., La.App., 171 So. 399.
It is true that the doctrine of res ipsa loquitur is not proof and does not supply a want of proof, but, nonetheless, the application of this rule of evidence creates a presumption of negligence on the part of defendant, which presumption must be rebutted by the defendant in order to relieve him from liability flowing from presumptive negligence. Smith v. United States, 5 Cir., 96 F.2d 976; Asprodites v. Standard Fruit Steamship Co., 5 Cir., 108 F.2d 728; Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917.
Under the facts of the instant case, there is no question as to the applicability of the doctrine. The allegations of the petition negate any action on the part of the injured boy which could have caused the accident, and any knowledge on the part of the plaintiffs as to an explanation of the cause of the particular accident. Clearly, therefore, this case calls for the application of the doctrine, and the burden was upon defendant to clear itself of responsibility.
Coupled with the question of res ipsa loquitur, this case gives rise to another proposition of law, namely, the capacity and character in which the injured youth was present on the premises of the defendant at the time of the accident. Upon the answer to this question, of course, depends the degree of care required of the defendant.
Unquestionably, Earl Mercer was present on the premises of the defendant company at the time of the accident as a trespasser, a licensee, or an invitee. There is no contention that Mercer was a trespasser, but there is a serious argument as to whether he occupied the status of licensee or invitee. It is contended on behalf of plaintiffs that the injured boy was an invitee, and, in the alternative, even if he were a licensee, that the facts demonstrate defendant's neglect of the duties owed to licensees. On the part of defendant, counsel urges that Mercer must be considered as a mere licensee, taking the premises as he found them, and that defendant was not liable for any breach of duty to him as a licensee.
The jurisprudence of Louisiana, as well as other states, has very definitely designated the limits of the obligations and responsibilities of an owner or possessor of property toward those persons who make use of such premises as licensees or invitees. It is unnecessary to discuss in detail the many cases bearing upon this difference in degree of duty. Suffice it to say that if the injured party was a licensee the defendant owed simply the duty of refraining from wilfully or wantonly causing him injury, or of setting traps for him, or of recklessly or wantonly exposing him to danger. See 38 Am.Juris., Negligence, Sec. 104, page 765.
If, however, it is found that the injured party occupied the status of an invitee, then the duty of the defendant is correspondingly greater, requiring defendant to use ordinary care in maintaining its premises in a reasonably safe condition for such use by the invitee as is consistent with his purpose. 38 Am.Juris., Negligence, Sec. 96, page 754.
Definitions established by text writers and by decisions of the high Courts of our land clearly define invitees and licensees. But, necessarily, these definitions are rather general in scope, so that, despite what appears to be a clear and evident distinction between the two classes, it is sometimes difficult to draw the line which separates one class from the other in the light of all the circumstances and facts of particular cases.
These broad and general definitions of which we speak define a licensee as being one who enters upon the premises *Page 275 
of another in the pursuit or furtherance of his own benefit, convenience or pleasure. It is considered that such a person is removed from the status of a trespasser by the express or implied permission of the owner or possessor of the premises. This permission may be either specific or general and may arise either from express declaration by the possessor of the premises or from the mere following of a custom which has been established to the knowledge of the possessor and accepted or acquiesced in by him. By way of illustration, it would appear that a person who, in traveling from one point to another, requests and receives the permission of the owner of a tract of land to cut across such tract in order to shorten the traveler's distance between two points, becomes a licensee of the possessor of the premises. Under the same conditions where permission is neither expressly asked nor granted, nonetheless, the use by numbers of persons of a trail or a passage, if such use be known and permitted by the possessor of the premises, fixed the status of all those who pass in such manner as that of licensees.
An invitee, by definition, is considered to be one who enters upon the premises of another in answer to a direct or implied invitation. But there are few cases in which the occupant of the premises extends a personal invitation which solicits the entrance by various and sundry individuals thereupon. For the most part, cases involving invitation are concerned with implied invitation, that is, invitations which are assumed by virtue of the business of the possessor of the premises and the purpose that occasions the visit of the so-called invitee. 38 Am.Juris., Section 98, page 758. It is thus apparent that the purpose of the entry is an important feature in defining and establishing the class in which a given individual should be placed. In determining the purpose of the visitor, with regard to his classification, it is well-established that such purpose must be one concerning a matter of mutual interest, the performance of some duty, a proceeding in the usual course of business, or a matter which will benefit the owner or occupant of the premises. 38 Am.Juris., Sec. 99, page 759.
Many of these definitions and distinctions, as set forth above, are thoroughly reviewed in the case of Mills v. Heidingsfield, La.App., 192 So. 786.
Another way of making the distinction between these two classes would be to say that the purpose of the use of the premises by a licensee is essentially beneficial to himself alone, whereas the use of the premises by an invitee is in furtherance of the interests of both the invitee and the possessor of the premises. In one instance the benefits to be derived from the use accrue to one party only, whereas in the other case the benefits would be mutually advantageous.
But, it must be considered that the determination of mutuality of benefit or interest does not necessarily rest upon the actual receipt of benefits or advantages by the owner or occupant of the premises, for one may be an invitee in the course of a business transaction with such owner or occupant, even though the owner or occupant ultimately receives no benefit from the transaction. It is easy to imagine examples of such cases. A salesman of goods, wares or merchandise handled by the owner or occupant of premises, a prospective purchaser of goods offered for sale, an insurance salesman offering protection to the owner or operator of a business, etc., would come under the classification of invitees, notwithstanding the fact that the salesman might make no sale, the purchaser might make no purchase, and the insurance agent might fail to consummate a contract.
There are other distinctions which might be made between the classes under discussion. For example, it has been held that the status of the user of premises may change, and one who enters as an invitee may lose such status and become merely a licensee before leaving the premises. Vargas v. Blue Seal Bottling Works, 12 La.App. 652, 126 So. 707. With this, and other fine points of distinction, however, we are not concerned in the instant case.
We have carefully considered numerous authorities cited in brief of defendant's counsel, and our expressions with reference to definitions of licensees, invitees and the corresponding duties owed these two classes are in accord with the holdings in these cases. The cases of Peters v. Pearce, 146 La. 902, 84 So. 198; Boyett v. Chicago, R.I. P.R. Co., 123 La. 579, 49 So. 200; and Burbank v. Illinois Cent. R. Co., 42 La.Ann. 1156, 8 So. 580, 11 L.R.A. 720, which are relied on by defendant's counsel, we do not consider to be determinative of the case before us. It is evident that the facts of each individual case must be carefully *Page 276 
considered in arriving at a classification of the status occupied by the accident victim, and in applying the proper rules with reference to the degree of care.
If we regarded the record in this case as conclusively establishing the fact that Earl Mercer stepped outside of the office to wait on the trail or path in obedience to the direction of some employee of defendant, there would be no difficulty in disposing of this point. But we can not so hold, for the testimony on this point, as given by Earl Mercer himself, is lacking of any corroboration whatsoever, and, because of the weakness of the nature of the testimony and the failure of any substantiation, we cannot rest our decision upon such an unsatisfactory showing. For this reason, we prefer, for the purpose of this opinion, to disregard this testimony, rejecting the same as being inconclusive, and pitch our decision upon other grounds.
The purpose of young Mercer's visit is well-established and is uncontradicted. He went to the shop office of the defendant railway company for the purpose of soliciting and attempting to sell advertising space. In furtherance of this purpose he had elected to call upon Mr. Corley, with whom he was acquainted, and with whom he had theretofore done some other business. It is true that Corley was not the proper person nor the authorized agent of defendant company with regard to the purchase of advertising space, but it is also true that Earl Mercer was not shown to have been cognizant of this fact. There is no reason to doubt Mercer's good faith in soliciting advertising space from Corley. Whether or not Corley would have favorably responded to the solicitation is a matter that we regard as being beside the point.
In the light of these facts, we are faced with the question as to whether Earl Mercer's purpose in visiting the premises of the defendant company was legitimate, and was susceptible of bearing the fruit of mutual advantage and benefit to the parties involved. To doubt the possibility of benefits accruing to railroads as the result of advertising programs would be to convict the railway systems and roads of our country of an inconceivable extravagance and waste, for we are confronted on every hand with their advertising programs in papers, periodicals, billboards and other mediums.
There is nothing in the record which would indicate that Earl Mercer had any realization or knowledge of the fact that he was embarking upon a fruitless mission, either because of lack of authority of the employee of the defendant company toward whom he chose to direct his efforts, or by virtue of lack of interest in the proposal he sought to make. We are convinced of the fact that Mercer was engaged upon the course of a legitimate business venture, a venture which unquestionably promised benefit to himself, and which held out at least a potential benefit to the defendant company. In the light of such a conclusion it is evident that Earl Mercer in entering upon the premises of the defendant company, and in waiting upon such premises, occupied the status of an invitee.
This determination of the classification of the accident victim also disposes of the degree of duty owed to him by the defendant company. As the owner and occupant of the premises the defendant company was obligated to furnish reasonable security and protection against the possibility of injury, to use reasonable care in maintaining its premises in a safe condition, to refrain from any act of negligence or carelessness whereby the premises might be rendered dangerous to one who might be thereupon as an invitee.
In view of our determination of the status of the accident victim as that of an invitee, it is obviously unnecessary to discuss the extent and nature of defendant's duty toward one who might be classed as a licensee, although, from our study of the record, we are inclined to the opinion that defendant would be liable, under the circumstances of this case, even to a licensee.
In considering the manner in which defendant company discharged the duties dependent upon it, we find some conflict of testimony as to the circumstances surrounding the actual occurrence of the accident, which conflict, however, we do not regard as being serious. Young Mercer testified that he was standing at the end of the row of stacked steel car wheels, which weighed approximately 750 pounds each, when the near wheel, without warning, and without any cause which he could determine, fell over upon him, knocking and pinning him to the ground. He further testified that immediately the next wheel *Page 277 
fell on top of the first. He screamed for help and his cries were heard by employees of the defendant company, who rushed to his assistance. Some four or five of these employees assisted in removing the wheels from the prostrate boy, placed him upon an improvised stretcher and moved him into the shade of the building to wait the attendance of a physician. Mercer testified that he was not touching the wheels at the time of the accident, and that he did nothing which might have disturbed or changed their position.
As opposed to young Mercer's testimony, other witnesses testified variously that the boy was leaning against the stack of wheels; that he had one hand on the stack of wheels while looking over some papers; that he had both hands on the stack; that he laid his papers on top of the wheels and was resting his hands upon the nearest wheel.
In spite of this conflict in testimony, we find not the slightest explanation as to the cause of the accident. It is inconceivable that a frail 16-year-old boy, weighing only 95 pounds, could have pulled a 750 pound car wheel from a leaning position to the vertical and over upon his person if the wheels were properly, safely and securely stacked. If this were possible then, obviously, the method employed was unsafe and the location used constituted a menace, a danger and a hazard. Careful consideration convinces us that we can come to but one reasonable conclusion, namely, that the wheels in the particular row by which young Mercer stood were carelessly and negligently arranged and stacked so that the first two wheels of the row fell upon the unfortunate youth as he stood either against or in close proximity to the stack of wheels.
Under the application of the doctrine of res ipsa loquitur the burden of accounting for the accident, or the burden of absolving itself from any blame connected with negligence in the way of acts of omission or commission, rested upon the defendant. The defendant has failed to satisfactorily discharge this burden. Clearly, to our minds, the defendant is chargeable with negligence both of an active and passive nature — active in that its agents and employees in stacking the wheels upon the platform were guilty of carelessness and negligence in the improper performance of this duty, and passively, in that the improperly and carelessly stacked wheels were permitted to remain in a position where they endangered the safety of those who used the passageway to defendant's shop office.
We find no basis for a conclusion that any act of the victim was responsible for the occurrence of the accident. This being so, it necessarily follows that defendant was chargeable with liability and must be held responsible.
As to the quantum of damages, we find no error. This point was not discussed in briefs or arguments by defendant's counsel, and counsel for plaintiffs have evidenced their approval of the award made by the district Judge.
In our opinion an award of $2,000 for an injury resulting in a fractured thigh and leg, necessitating two separate periods of hospitalization of several weeks duration each, an open reduction of the fracture, and the insertion of a plate, consequent pain, suffering and inconvenience, which injury, however, did not result in any permanent disability, substantially represents a satisfactory approximation of compensatory damage.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.