BLANCHE, Judge.
Plaintiff-appellant, Rosa Lee Shelton,[1] appeals a judgment of the Nineteenth Judicial District Court denying her claim for damages against the defendant-appellee, Aetna Casualty and Surety Company.
Merle Shelton, who was insured by defendant Aetna, hereinafter sometimes referred to as “property owner,” owned Lots 1 and 2, Square 22, Standard Heights Subdivision, East Baton Rouge Parish. His home is located on Lot 1 facing Linwood Street, and on the rear of the lot facing Chippewa Street is an apartment which was occupied by his elderly parents, Walter and Rosa Lee Shelton. The elder Shel-tons occupied the apartment under a usu-fruct granted by their son.
Upon the .contiguous Lot 2 is located a wooden garage, concrete driveway, garden area, a porch swing hanging from an A-frame, and a set of lawn chairs. This area was used extensively by the elder Sheltons and their friends and neighbors.
Early in the morning on June 3, 1973, property owner mixed a solution of lime, baking soda and water for the purpose of removing some flaking paint from the garage. After brushing the solution on the side of the brown-painted garage, he washed it down with a hose and departed at approximately 10:00 A.M. for the remainder of the day.
At approximately 6:00 P.M. that same day the elder Mrs. Shelton exited her apartment on Lot 1 and proceeded across the driveway toward the swing area on Lot 2 to sit and converse with her husband and another elderly friend, Mr. Edmond C. *310 Lively. As the seventy-one year old mother reached the far edge of the concrete driveway and stepped upon the dirt pathway leading to the swing, her feet allegedly slipped on the residue which was washed from the garage, and she landed heavily in a sitting position. She was immediately transported to the Baton Rouge General Hospital where she was confined for the next eleven days suffering from a compression fracture of the spine at the fourth lumbar level (L-4). After discharge from the hospital, Dr. F. C. McMains, an orthopedic surgeon, continued to care for her as she still experienced radiating leg pains and required a back support. She was left with a IS percent permanent residual disability of the body as a result of the fall.
Mrs. Shelton testified that she did not notice anything unusual about the surface of the ground, either before or after she fell, but that some “goo” clung to her dress following the mishap. She acknowledged that she was familiar with and frequented the area with her husband. She also acknowledged that the spot where she slipped had been filled with fresh dirt prior to the incident. She, as well as Mr. Lively, asserted that the residue from the garage had formed a foamy substance which, because of the brown color of the paint being removed, could hardly be distinguished from the ground itself. Mrs. Shelton contended that because of the slippery nature of the substance and its camouflaged color she sustained the injuries of which she complained.
It is also clear from the record that the property owner knew that the area immediately adjacent to the garage was regularly used by his mother and father. It also appeared that the property owner did not attempt to clean or barricade the area to prevent persons from coming in contact with the removed paint and residue.
The trial judge concluded that Mrs. Shelton was a licensee upon her son’s property, Lot No. 2, and, therefore, his duty was to warn her of known dangers only, citing Mercer v. Tremont and Gulf Railway Company, 19 So.2d 270 (La.App. 2nd Cir. 1944), writ denied but unreported, October 3, 1944. The judge then stated:
“ * * * [T]he Court finds no reasonable basis for holding that he created a dangerous or hazardous condition calling for either removal of the residue or warning of its existence. Consequently, the Court finds no negligence on the part of Merle Shelton which should lead to any liability on his part.” (Written Reasons for Judgment, Record, p. 25)
The court found that the insurer Aetna provided for medical payments in the event of injury upon the insured’s premises, and as $117.75 still remained outstanding to Dr. McMains, the court awarded judgment in favor of the plaintiffs, Iris Shelton Ritter, Barney L. Shelton and Lois Shelton Math-erne, for that amount plus legal interest from date of judicial demand until paid. The expert witness fee of Dr. McMains was set at $75 and taxed as costs to the defendant.
The plaintiff contends the trial court erred in holding that Mrs. Shelton was a licensee rather than an invitee and consequently that the property owner owed a duty to reasonably inspect the premises and make it safe for her presence. Plaintiff also contends it was error to find that there was no negligence on the part of property owner which would lead to liability for the injuries complained of.
Ever since Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), and Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), the courts of Louisiana have been applying the “duty-risk” approach to determine the existence of liability. It was first applied to duties imposed by statute in Dixie, and later to duties imposed by judicial edict in Hill. This same analysis has been utilized to determine a landowner’s liability to his invitee in Stewart v. Gibson Products Co. of Natchitoches *311 Parish Louisiana, Inc., 300 So.2d 870 (La.App. 3rd Cir. 1974).
The first step in the duty-risk analysis is to make a determination of the cause in fact of the harm or injury. It has not been seriously contested that the presence of the “goo” which was created when the paint remover was applied to the garage and subsequently washed off was not a cause in fact of the injury to the plaintiff. This alone, however, does not establish liability. Additionally, it is necessary to ascertain whether the property owner breached a legal duty owed to the plaintiff. In the instant case, we think there was no breach of duty.
Utilizing the hindsight test of Hill, supra, we find that the instant injury was foreseeable, as evidenced by the fact that it did indeed happen. But as was aptly expressed in Stewart v. Gibson Products Company of Natchitoches Parish Louisiana, Inc., “. . . Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of dxity owed because of that conduct.” (p. 878, emphasis supplied)
To determine whether a foreseeable event lies within the scope of duty owed to a plaintiff, we note the following guidelines from Hill, supra:
“Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court’s own judgment of the scope of protection intended by the Legislature. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Pierre v. Allstate Ins. Co., supra. Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. Malone, Ruminations on Dixie Drive It Yourself, 30 La.L.Rev. 363 (1970); McDonald, Proximate Cause in Louisiana, 16 La.L. Rev. 391 (1956). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. ‘All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.’ Malone, Ruminations on Cause-In-Fact, 9 Stanford L. Rev. 60, 73 (1956).” (256 So.2d at 622-23)
We now apply these standards to the instant case.
Assuming the plaintiff was an invitee, the policy requiring this landowner to exercise a high degree of care toward her does not make him an insurer of the invitee’s safety. A landowner is not obliged to protect an invitee against every risk that may befall him while upon the premises, even though in hindsight it may appear to be foreseeable.
Policy dictates that in some circumstances, there is simply no duty owed to the aggrieved invitee.
The instant plaintiff was not a business patron, nor was the activity which caused the accident inherently dangerous so that policy would require the utmost of care as *312 was the case in Stewart, supra. The plaintiff was likewise not a social guest who had visited the defendant’s home on the day of the activity which caused the injury. Rather, she was simply accorded the everyday privilege of the use of the landowner’s entire property, and was treated as any other member of the landowner’s household. It becomes apparent, therefore, that even though she was given a usufruct of a portion of Lot 1 and, therefore, impliedly and tacitly invited to use both Lots 1 and 2 as her needs required, the policy considerations underlying her invitee status would not impose a duty upon this landowner to protect her against the injury complained of.
Surely this landowner would be under no duty to the other members of his family who reside upon the premises to erect warning devices around his own garage to prevent their slipping and falling on the washings some eight hours after he removed paint therefrom. And it would be illogical to require him to do so with regard to the plaintiff, his own mother, who was living upon a portion of the two adjacent lots by virtue of a legal usufruct.
Honestly put, the plaintiff would have this Court erect an invisible line between Lot 1 whereon the plaintiff exercised her legal right, and Lot 2, whereon she did not possess a usufruct, and where the accident occurred. She would then urge us to apply the rules with regard to landowner and invitee and award her for her injury, simply because it happened upon Lot 2, whereon she had no usufruct and attained the confusing and illusive title of “invitee.” By so arguing, the plaintiff wants the best of two worlds; that is, treatment as one of the family with the privilege of co-occupying the entire premises with her landowner-son and his family, and in addition, she wants recovery for her injury based upon her contention that she is an invitee upon those very same premises.
As put by Professor Malone, supra, the rule should not apply to the facts of this controversy. The policy considerations behind the elevation of a person to the status of invitee does not impose a duty upon the landowner in the instant case to protect against the injury sustained to this particular plaintiff. We, therefore, agree with the trial court that the defendant landowner incurred no liability as a result of his mother’s fall on his premises.
Defendant Aetna has answered the instant appeal, contesting the award of $117.75 in medical expenses. They correctly point out that the instant suit was for the negligence of the landowner and no claim therein was made for payments pursuant to the contractual provisions of the insurance policy. There is no indication in the record that demand was made upon Aetna for the additional medical payments, nor is there any indication that Aetna refused to pay the same. Given those circumstances, it is premature to cast Aetna in judgment therefor.
For the foregoing reasons, the judgment of the Nineteenth Judicial District Court which denied the claim for damages by the plaintiff, Rosa Lee Shelton, against the defendants, Merle Shelton and the Aetna Casualty and Surety Company, is hereby affirmed.
The judgment, insofar as it awarded $117.75, together with legal interest from date of judicial demand, to the plaintiffs, Iris Shelton Ritter, Barney L. Shelton and Lois S. Matherne, is hereby reversed and set aside. In accordance therewith, the taxing of expert witness fees of $75 as court costs is also reversed and set aside. All costs of these proceedings are to be paid by appellant.
Affirmed in part, reversed in part, and rendered.

. Following the filing of the suit, Walter Shelton died, and his children were substituted as parties plaintiff for the special damages which Mr. Shelton claimed as head and master of the community.