We are constrained to overrule the motion for rehearing.

GARNER et al. v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAV. DIST. et al.

No. 9925.

Court of Civil Appeals of Texas. Galveston.

Jan. 31, 1934.

A. T. Norman, of Houston, for plaintiff in error.

D. A. Simmons and W. N. Arnold, Jr., both of Houston, for defendant in error Harris County Houston Ship Channel Nav. Dist.

Royston & Rayzor, of Houston, for defendant in error Southern S. S. Co.

PLEASANTS, Chief Justice.

This is a suit by plaintiff in error F. C. Garner, for himself and for his minor son, Felix Garner, against the navigation district and the Southern Steamship Company to recover damages for personal injuries sustained by the minor plaintiff and alleged to have been caused by the negligence of defendants.

The allegations of negligence embraced in plaintiff's petition are:

"I. That heretofore on or about the 13th day of April, 1930, Felix Cecil Garner, age twelve (12) years, the minor son of plaintiff, together with several other boys of tender age, were attracted to the concrete platform of wharf No. 4 at Port of Houston as a suitable place to play hand ball in the shade of the spacious wharf and platform sheds, such sheds had frequently theretofore been used for similar purposes by such boys and others, including adults and children, which such facts were well known to defendants; at the immediate time and place in question a hand ball game was in progress between employees or others immediately adjacent to such wharf platform, and Felix Cecil Garner and his companions, after watching the game in progress, proceeded to pay (play) with their ball, which after a time became lodged among the frame work, beams and supports of the warehouse sheds; in an effort to recover their ball the boys discovered a ladder in the side of one of the large up-right steel beams, leading to the cage used by the operator of the traveling unloading crane; upon reaching the vicinity of the crane plaintiff's minor son, Felix Cecil Garner, and his three companions, all being from nine to twelve years of age, proceeded along a large steel cross beam or girder in a general southeastern direction toward the southern terminal of the large unloading crane, which terminates in a well sunk in the side of the warehouse to the south of wharf shed No. 4, where they climbed from the large beam by means of a ladder on the side of the up-right beam to the concrete base landing and such crane terminus; later in climbing back to the steel cross beam to return the same route to the wharf plat-

form, Felix Cecil Garner had reached a position near the top of such beam when without warning he made contact with the defendants' highly charged electric cable, and fell to the concrete floor of such crane terminus, or well.

"II. That the public generally, including children, frequented such wharf No. 4 platform and the other wharfs and platforms in the vicinity of the Houston Port turning basin with the knowledge of defendants; at the time the injured Felix Cecil Garner and his companions entered upon such wharf platform defendants had a watchman who was then in the west door of wharf No. 4, looking in the general direction of Felix Cecil Garner and his companions; that such watchman, whose name is unknown to plaintiff, later closed such door and left the vicinity of such platform without notifying or warning such boys of any danger or regulations in connection with the use and operation of such platform; that the injuries to Felix Cecil Garner occurred immediately after such watchman left the scene of the play of such boys.

"III. At the time and upon the occasion of the injuries to Felix Cecil Garner, the wharf platform, steel cage, crane, machinery and equipment was idle, and was not in use but was under the joint control and management of defendants herein, the exact nature of the relationship of defendants being unknown to the plaintiff, but plaintiff understands and is informed that defendant Southern Steamship Company operates and controls such wharf at stated intervals under a contract of lease, the terms and conditions of which are impossible to set out by virtue of the said contract and lease being in the possession and hands of defendant, and notice is here now given to defendants to produce such contract and lease upon the trial of this cause, otherwise secondary evidence will be introduced to prove the terms thereof.

"IV. At the time and upon the occasion of the injuries to plaintiff's minor son, while the machinery and equipment was idle and not in use, it was a rule, regulation and custom for the electric current to be cut off; that plaintiff's minor son and his companions were incapable because of their tender age to appreciate or know the danger incident to a possible highly charged electric wire or cable, if in fact they knew that there was any such cable on such beams; that Felix Cecil Garner acted upon the impulse of a boy of his age in playing upon such platform, and in climbing the ladder to the steel cage and crossing the steel girders without appreciating the im-

minence of any danger, if any, in connection therewith; that defendants' rules, regulations and operating customs require and provide for adequate police and watchmen at all times on such wharf platform to prevent trespassing and encroachment in places of danger by the public in general, which such customs and regulations were well known to and relied upon by the public in general as a safeguard and protection to those frequenting this platform, including this plaintiff's minor son.

"V. Defendants, jointly and severally, were negligent at the above time and place as follows, to-wit:

"(a) In failing to provide and maintain competent and diligent watchman at such platform and sheds and prevent plaintiff's minor son and others from suffering injuries;

"(b) In the alternative, if defendants did maintain a watchman, in failing to warn plaintiff's minor son and his companions, and prevent them from climbing such ladder and beams, resulting in Felix Cecil Garner's fall and injuries;

"(c) In knowing and observing plaintiff's minor son and his companions at such warehouse platform and sheds and failing to warn them of the imminence of danger should they climb such ladder and attempt to cross such steel girders and beams, and prevent their climbing and the subsequent fall and injuries to Felix Cecil Garner;

"(d) In failing to throw the switch and disconnect the electric current from the highly charged cable wire as was the custom and requirements when such machinery and equipment was not in use;

"(e) In realizing and knowing the inclination of boys of tender age to climb and the presence of plaintiff's minor son and his companions on such platform and abandoning such platform and leaving same unguarded while such boys were there and rendering it possible for such boys to climb as hereinabove set out, resulting in the fall and injuries of Felix Cecil Garner; which such acts, jointly and severally, constitute negligence on the part of defendants, all of which were a proximate cause of plaintiff's minor son's injuries and the damages to plaintiffs. * * *

"VI. Still further pleading herein, plaintiff would show as further negligence on the part of defendants that the platform of wharf No. 4 was shady and when not in use was frequented by visitors to the ship channel, and sightseers, including children of tender age; that on the occasion of the injuries of

plaintiff's minor son, a handball game was in progress between adults near such platform and sheds, which were not then in active use, and the plaintiff's minor son and other small boys were attracted thereto as a suitable place for a handball game in the shade, and they played for a time on such platform; that the steel cage near the roof of such shed and the ladder leading thereto and to the large steel beams and supports, thereafter attracted such boys, including plaintiff's small son, and inspired them to climb such ladder to the cage and to walk such beams; that defendants were severally and collectively owners and operators, and in charge and control of such wharf, shed and platform, and responsible for their maintenance and upkeep; that they were severally and collectively responsible for the turning on and off of the electric current charging the electric cables, and wires of such sheds, and for their proper insulation and safety; that defendants knew that visitors, including small boys, frequented such platform, and knew and were charged with knowledge of the attractiveness of such platform, sheds, ladder, cage and steel beams to boys and children of tender age, and of the tendency and habits of such boys and children to frequent such places and of their tendency to climb; that defendants knew and were charged with knowledge of the highly charged electric cables and electric wires in such sheds, and the danger to small boys or children playing thereunder, attracted thereto, and climbing or coming in contact with such cables and the imminent danger of their being injured and suffering death by reason thereof; that defendants knew the platform of concrete below the cable and steel beam supports were thirty to forty feet, and that should children or others climb such ladder or walk such beams they would be in danger of electrocution, or of falling to their death; that by reason of the attractiveness of such sheds, ladder, cage and steel beams to small boys, as a suitable place to climb and play, and the danger from coming in contact with highly charged electric wires, and being electrocuted, or of falling to their death, full knowledge of which is charged to defendants, their agents and employees, and their failure to properly guard and prevent such boys from climbing and being injured, including this plaintiff's minor son and others, constituted negligence on the part of defendants, and constitute a proximate cause of the injuries to plaintiff's minor son."

The trial court sustained a general demurrer to plaintiffs' petition presented by each of the defendants, and, plaintiffs declining to amend, their suit was dismissed.

■■ Unless the minor plaintiff was a licensee or invitee under the "attractive nuisance" doctrine as that doctrine has been declared and enforced by our courts, he was a mere trespasser and could only recover for injuries willfully or intentionally caused him by the defendants. We think the allegations of the petition are insufficient to show that the minor plaintiff, when, in his effort to recover a ball that had been thrown under the roof of the warehouse across the railway tracks and some distance from the platform upon which he and other boys were playing handball, he climbed to the top of the platform roof and proceeded along a beam across the railway tracks and into the warehouse where he fell and received his injuries, was not a trespasser, but was impliedly invited to undertake this dangerous means of regaining his ball, under the "attractive nuisance" doctrine.

■ The rule first declared by the courts of this state in the "turntable cases," that the unguarded maintenance by the owner of dangerous appliances and machinery upon his property, unusually attractive to children, is an implied invitation to the children to go upon the property, cannot be applied to the facts alleged in plaintiff's petition. In order to invoke this rule the facts alleged must show not only that the instrumentalities which caused the injury were dangerous and unguarded, but unusually attractive to children and allured them to go upon the premises, and that the owner knew or should have known that children were so attracted to go upon the premises and make use of such dangerous instrumentalities.

The instrumentalities and appliances through and by which the injury is alleged to have been inflicted upon the minor plaintiff were the roof-covered platform where handball was frequently played by children, and also by adults, the ladder leading to the conveyer situated near the roof of the platform and extending across the railway tracks to and under the roof of the warehouse, and the electric cable by which the defendant steamship company had been operating the conveyer. The allegations of the petition as to the attractiveness of the platform as a place for playing handball and its frequent use for that purpose by children and others, with the knowledge of the defendants, present no cause of action by the minor plaintiff for injuries not received on the platform and wholly disconnected from any danger incident to

such use. There are no allegations that the ladder, the conveyer, and the electric cable were not the necessary and usual appliances for the operation of the wharf property. It is true the petition alleges "that defendants knew that visitors, including small boys, frequented such platform, and knew and were charged with knowledge of the attractiveness of such platform, sheds, ladder, cage and steel beams to boys and children of tender age, and of the tendency and habits of such boys and children to frequent such places and of their tendency to climb." This allegation is a mere conclusion of the pleader. It is not alleged that any of the minors who frequented the platform had ever before climbed the ladder and gone along the beams carrying the conveyer and electric cable into the upper part of the warehouse across the railway tracks, and the allegations of the petition negative the conclusion that the minor plaintiff and the boys who were with him were allured to use these instrumentalities because of their unusual attractiveness, but only for the purpose of recovering their ball.

In the case of Simonton v. Electric Light & Power Co., 28 Tex. Civ. App. 374, 67 S. W. 530, 532, in which writ of error was refused, this court held: "Appellant contends that under this rule (Turntable Doctrine) the facts stated in the petition are sufficient to authorize a finding that his son climbed upon appellee's pole by the implied invitation of the latter. We cannot concede the soundness of this contention. In considering the question of the sufficiency of the petition, we must disregard the statement by the pleader of mere legal conclusions, and test the petition solely by the facts stated therein. The facts pleaded do not show that the pole which is alleged to have been negligently maintained by the defendant was specially or unusually attractive, or that such pole was not constructed and maintained in the manner in which poles of this character are ordinarily constructed throughout the country."

Our Supreme Court, in the case of Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 377, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, says: "But we cannot agree that one who erects upon his own land an oilmill, or other like establishment for pursuing in the ordinary way one of the ordinary businesses of the country, is under a duty arising merely from the construction and use of the plant to adopt in advance safeguards against danger from his machinery to children who may intrude upon his premises.

Such businesses, at least, do not belong to that class of things that are to be regarded as so attractive as to impose the duty of guarding against the entrance of persons not induced to enter by the owner in any of the ways indicated."

The same rule is announced and enforced in the cases of Missouri, K. & T. Ry. Co. v. Edwards, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825; San Antonio & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28.

The long-established rule of law and reason, that one can only be held liable for injury to another that he should have anticipated might be the natural result of his alleged negligent act, must be applied in this case. From the facts alleged in this petition, it cannot be held that either of the appellees could have reasonably anticipated, when they failed to have the electric current cut off from the cable operating the conveyer, high up in the roof of the platform and warehouse, that the minor plaintiff in his effort to recover the ball with which he had been playing would come in contact with the cable and be injured in the way alleged in the petition. It seems to us that to so hold would be to demand a foresight on the part of appellees far in excess of that bestowed upon ordinary human beings.

These conclusions require an affirmance of the judgment and render it unnecessary to pass upon the other questions presented by the briefs.

Affirmed.