## PLATT et al. v. BENDER et al.

### No. 5511.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Jan. 3, 1938.

the well full force, allowing the entire pressure which had been built up by pumping air into the well to be suddenly released and without warning; (2) that the flow line was made of unsound pipe; and (3) that defendants failed to securely attach the flow line to the tank and ground; all of which acts were the cause of the accident.

The widow claims damages which she itemizes in the sum of $12,508.65, and damages for her minor children in the sum of $16,000.

Defendants admit they were operating the well as a joint adventure on a fifty-fifty basis. They deny that deceased was an invitee on the premises at the time of accident and allege he was a trespasser. They deny any acts of negligence on their part and, in the alternative, plead contributory negligence on the part of deceased. In the further alternative, they plead that deceased assumed the risk.

On these issues the case was tried below, resulting in judgment for defendants and rejecting plaintiffs' demands. From this judgment they have prosecuted this appeal.

Before entering upon the trial of the case, the following stipulations were agreed upon:

"1. It is agreed by counsel for plaintiff and S. Bender and Clarence Ricou, personally, without the necessity of being offered in evidence, the decision of the Texas court in support of the matters alleged in Articles 33 and 34 of the defendants' answer. That any decision from the Texas court may be cited in oral argument and brief by all parties hereto as fully as if same had been offered in evidence.

"2. It is further agreed by all parties that at the time of the accident herein involved, Clarence Ricou and S. Bender were the joint owners in equal shares of an oil and gas lease covering and affecting the 200 acres of land including and surrounding the site of the well and the scene of the operations involved in the action and that Albert Sidney Platt, W. C. Platt and P. W. Platt acquired by warranty deed, this same property being the site of the 200 acres, including the drilling site and scene of operations, and land surrounding same from T. M. Hearne, Jr., on the 18th day of November, 1925. That in said deed or transfer there was reserved in the following language: 'There is excepted, however, from the above described

H. V. Booth, and T. W. Robertson, both of Shreveport, for appellants.

Foster, Hall, Barrett & Smith, of Shreveport, for appellee.

DREW, Judge.

Mrs. Ivey Heard Platt, widow of Albert Sidney Platt, appearing herein individually and as tutrix of her minor children, issue of her marriage with the deceased, instituted this suit for damages caused by the death of her husband when a flow line connecting a well, which defendants were attempting to bring in as an oil well, with a storage tank became unjoined, causing part of said line to swing around and strike deceased on the head, which resulted in his death some eight days later.

Plaintiffs alleged deceased was on the premises at the time of the accident as an invitee. They further allege that defendants, S. Bender and Clarence Ricou, entered into a joint adventure and partnership to operate the potential oil well and were operating it at the time of the accident in an effort to bring it in as a producer; that the well was located in Harrison county, Tex.

The negligence alleged on the part of defendants is (1) that defendants opened the valve or other mechanical device on

land and not conveyed hereunder, any and all oil, gas and other minerals in and under and that may be produced from the said land above described, together with the necessary right of ingress and egress for producing and developing said oil, gas and other minerals as may be owned in grantor or retained by him.'

"All parties further stipulate and agree that under the laws of the State of Texas the reservation or retention of minerals by the vendor is in perpetuity.

"3. It is further agreed by all parties that the oil and gas lease which had been acquired by the defendant prior to the accident by the lessees provided no limitation as to the physical possession granted to the lessees.

"4. It is further agreed by all parties that the oil and gas lease to Clarence Ricou and S. Bender was in full force and effect at the time the accident involved in this case occurred.

"5. It is admitted by the defendant that Mrs. Ivey Heard Platt was appointed tutrix in proceeding No. 68132 on the docket of this court and is the tutor for the minors named in the preamble of the petition, to-wit: Howard, John W., Lloyd Milton and Marie Platt."

The lower court rendered a written opinion in which it held the deceased was on the premises at the time of the accident as a licensee and, since there is no allegation or proof that the defendants wantonly injured him, that plaintiffs' case must fall. The opinion is as follows:

"The present suit is one sounding in damages and growing out of the death of Albert Sidney Platt, which occurred in July, 1935, following an accident which happened in the early hours of July 16, 1935, on a lease situated in the State of Texas, where the defendants were carrying on operations looking to the completion of an oil and gas well.

"The facts on which plaintiff relies for recovery are set forth in the petition at some length; these may be shortened as follows:

" 'That the defendants, on July 16, 1935, and for some time prior thereto, were engaged in a joint adventure, having for its object the operation of a well for the production of oil or gas on the S. B. Baker Survey in the County of Harrison, State of Texas.

" 'That the fee of the land in the Baker Survey upon which said operations were being conducted was owned by plaintiff's late husband and his brother, W. C. Platt.

" 'That Albert Sidney Platt had been invited upon the property and to the site of the operation by defendants prior to his accident and injury.

" 'That on the early morning of July 16, 1935, while the said Albert Sidney Platt was at the site of said well, watching the operations of defendant, an explosion occurred, which caused the separation of a flow line being used to convey oil, fluid or other substances from the well into a storage tank, causing same to separate and a piece of said piping struck petitioner's husband, causing his death some eight days later :'

"Then follows the allegations of negligence in detail.

"We do not think it necessary to quote at this time the allegations of the answer.

"We think the first question that must be decided in this case is the status of the deceased at the time he was injured. Whether he was lawfully and legally at the place where he was injured, or whether he was an invitee, a licensee or a trespasser. The degree of care due him is about the same, whether he was lawfully there or as an invitee; and likewise the degree of care was the same if he were a licensee or a trespasser.

"Admittedly, the deceased and his two brothers were the owners of the surface rights and had no interest whatever in the minerals. When they purchased the surface, the minerals were reserved by the then owner and the defendants were the owners of a mineral lease deriving their rights from the owner of the minerals. We think it makes no difference whether the respective rights of the parties be judged by Texas law or Louisiana. There was a separation of the estates. The owner of the surface rights had the right to exercise all such rights subject to the paramount right of the owner of the minerals to do whatever was necessary to bring those minerals into possession. The owner of the minerals had the paramount right to use, to the exclusion of the owner of the surface rights, whatever portion of the surface was necessary to explore for the minerals and to operate same after such be found. We think that the owner of a mineral lease, just the same as the owner of an agricultural lease, has the right to exclusive possession as against everybody, including the owner of the surface rights. Of course, the owner of the

surface rights would have the right to see that the owner of the minerals was occupying no more of the surface than was necessary or was not damaging the other parts of the surface. Other instances might be found, but none of them are involved in the present case as no contention is made that the deceased went upon the premises for any such purpose.

"If the deceased were upon the premises at the time of his injury on the express or implied invitation of the defendants, then he was an invitee, and the case must be considered in that light. There is no contention that he received any express invitation from Mr. Bender. It is contended that that he did receive an express invitation from Mr. Ricou to be there that night. That such an invitation was shown in the testimony of Mr. W. C. Platt and that this testimony was not denied by Mr. Ricou. On this subject the testimony is:

" 'Q. Mr. Platt, I will ask you whether or not you or your brother were invited to the well there on the morning the accident occurred by either one of the defendants? A. Well, I don't know whether you would call it an invitation or not. When we went to leave Mr. Ricou told us, that is, you know, the evening of the 15th, that he was going to put air with it and stay up that night and complete it and was going to make a well, if possible; that he was going to stay up with it that night and he told us that when we went to leave, and he says for us to come back and we went to my house and my brother got his car and went home to eat supper and to do the night work, and we walked back there to see how it was coming out. Being the owners of the land, seeing something was better than being told, we would have better knowledge of it by seeing it.'

"It is true that Mr. Ricou did not deny this particular language categorically, but he did specifically deny the facts therein contained. On page 88 of the transcript we find:

" 'Q. Now, Mr. Ricou, prior to this accident had you at any time invited Albert Sidney Platt to come over and watch you on that lease? A. No, sir, I never saw him but just there on the road possibly once or maybe twice; I never invited him.

" 'Q. But he was there with the rest of the people around there watching what you all were doing? A. Yes, sir.

" 'Q. You never invited him to come back or stay there? A. No, sir.'

"And on page 131:

" 'Q. There has been some testimony here about giving Mr. Platt some coffee there on the lease. Do you know that he was given coffee there on the lease? A. I do not know whether he drank it or not. I offered him some. I do not recall whether he drank it or not.

" 'Q. Were you all having coffee? A. Yes, sir.

" 'Q. And he was there? A. Yes.

" 'Q. You may have invited him to have coffee, but did not invite him to stay on the lease? A. No, sir.'

"From the above, we do not think it can be said that plaintiff has proved that the deceased was expressly invited to be there either at the time of the accident or any other time.

"So, leaving out of consideration for the present any special warning that may have been given the deceased to stay off the lease or to get away from the point of danger, the next question is to determine whether there was any implied invitation.

"Of course, an implied invitation may be inferred in more ways than one. Such may be inferred from a long course of conduct or use, but that kind is not involved in the present case. It may result from mutuality of interest which is the kind contended for here.

"While operations were going on, Mr. Bender tried to buy from deceased a lease on 100 acres out of a larger tract, and while this deal was pending, there was a mutuality of interest, but that offer was rejected by the deceased, and at the time of the accident and for some time prior thereto, there was no deal pending between the parties at all. The deceased owned no part of the minerals under the land where the well was situated; he did own the minerals on other land nearby, the value of which would be affected by the outcome of the well then being worked on, and he was naturally interested in the outcome of the well. The defendants owned the lease where the well was being worked on and they were therefore likewise vitally interested in the outcome of the well. In that sense the deceased and the defendants were interested in the same thing,—the outcome of the tests being made on the well.

"This question of mutuality of interest has been discussed in several cases in the jurisprudence of this state, but the best discussion we know of is to be found in the opinion written by Judge Janvier of the Orleans Court of Appeal, and being the case of Vargas v. Blue Seal Bottling Works, 12 La.App. 652, 126 So. 707, 708. In that case the court quotes from Plummer v. Dill, 156 Mass. 426, 31 N.E. 128, 32 Am.St.Rep. 463, to the effect: 'To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged;' and then proceeds to hold that the visitor must not only so 'come,' but must likewise 'stay' under the same conditions. The court then said:

"'In order to create the status of invitee, there must be to some extent a mutuality of interest. In Corpus Juris, vol. 37, verbum "License," p. 161, we find: "A license implies permission or authority, and is more than mere sufferance, but it does not imply an invitation."'

"The court then discusses the cases of Walker v. Nona Mills Co., 151 La. 738, 92 So. 318; Foshee v. Grant, 152 La. 303, 93 So. 102, and others. The court then quotes with approval, seemingly, from Bennett v. R. R. Co., 102 U.S. 577, 26 L.Ed. 235, as follows:

"'It is sometimes difficult to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. "The principle," says Mr. Campbell, in his treatise on Negligence, "appears to be that invitation is inferred were there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."'

"The court then quotes from Petree v. Davison-Paxon-Stokes Company, 30 Ga. App. 490, 118 S.E. 697, as follows:

"'A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and who is permitted expressly or impliedly to go thereon merely for his own interest, convenience, or gratification.'

"And then quoting from Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A., N.S., 1045, 17 Ann.Cas. 576:

"'The general rule is that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier. * * A bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them. * * * Mere permission, without more, involves "leave and license," but bestows no right to care.'

"In support of the claim of mutuality of interest, plaintiff cites the cases of Bell v. H. & S. Ry. Co., 132 La. 88, 60 So. 1029, 43 L.R.A.,N.S., 740; Gray v. Foundation Company, 151 La. 7, 91 So. 527, and Noble v. Southland Lbr. Company, 4 La.App. 281. The question involved in the first cited case was entirely different from that in the present case. In the Gray Case, the Court held that there was a special invitation. And we cannot see where the Noble Case has any bearing.

"If being interested in the same thing and in the same way makes out a case of mutuality of interest, then the deceased was an invitee. For certainly the deceased was very much interested in seeing that the well came in as a producer, as that would make his nearby land more valuable. The defendants were likewise interested in seeing the well come in as a producer as it belonged to them. They were not interested in having the deceased know that, as it would 'bull' the lease market. We do not think that being interested in the same thing makes a mutuality of interest. There was no 'common interest or mutual advantage', but the object of the deceased being there was 'for the benefit of the person using it.' If the well should come in dry, the defendants would not want the leases at any price; if it should come in as a producer, it would be for the benefit of deceased and to the disadvantage of the defendants for then they would have to pay a higher price for leases than they would if they alone had the knowledge.

"Webster defines 'mutual' as,—

"'Reciprocally acting or related; reciprocally receiving and giving; reciprocal; interchanged.'

"'Syn. "Common". That is common in which two or more persons or things share

equally or alike. Mutual properly implies reciprocal action.'

"While there can be no doubt but that all parties were very friendly and that defendants made no attempt to force the deceased to leave the premises, yet we cannot see where there was any mutuality of interest within the meaning of the decisions or the definitions given by Webster. We think the presence of the deceased on the lease at the time of the accident was solely for his own benefit or advantage, and therefore he was at best only a licensee.

"Having reached that conclusion, then the only duty defendants owed him was not to wantonly or purposely injure him. On this score we can see no necessity for a discussion of the facts in the case, for even if there was negligence, as charged in the pleadings, it does not make out a case of wanton injury.

"For the foregoing reasons, there should be judgment rejecting the demands of plaintiff.

"T. F. Bell
"District Judge."

■ On the question of express invitation, the only testimony offered by plaintiffs is that of the brother of deceased, which is quoted in the opinion of the lower court. There was no one else who heard the invitation and there is a complete denial of such invitation by both defendants. We fully agree with the lower court in its finding that there was no express invitation to deceased to be present at the attempt to bring in the well. We are of the opinion the question of implied invitation has been correctly determined by the lower court. Deceased owned surface rights, and no doubt was of the opinion he had the right to go on the property at all times. If so, his idea as to his rights was incorrect. He had no right to that part of the premises used in the operation of the well, unless permission was granted him to be there by defendants. The fact that defendants did not order deceased off the premises and that he had spent a great deal of time there after operations had begun is sufficient to justify the conclusion that he was on the premises by the permission of defendants. Such tacit permission does not make deceased an invitee. It made him a licensee and bestowed no right to care. He took the premises as he found them, and the only duty owed him by defendants was not to wantonly or intentionally wrong him. He was on the premises for his personal bene-

fit, and was not there for the interest or benefit of defendants. There was no mutual interest or benefit between him and defendants, as required by law to bring him into the class of an invitee.

■ Plaintiffs contend that under the agreed stipulations of fact any decision of the courts of Texas can be cited and relied upon, the same as if it had been offered in evidence, and further contend that under the decisions of the Texas courts a licensee is protected against active negligence, and the negligence of defendants in this case was active. The agreement relied upon is No. 1 in the stipulations of fact, and dispenses with offering in evidence the decisions of the Texas courts in support of matters alleged in articles 33 and 34 of defendants' answer, which are as follows:

"XXXIII. That under the laws of the state of Texas, oil and gas in place are regarded as real estate; and the lessee of an oil or gas lease has the lawful right to possession of the leased premises, and particularly has the exclusive right of possession of that portion of the surface necessary and convenient to be used by him for the discovery and production of oil and gas, said law of the state of Texas being exemplified by the following decisions of the Texas Courts of Last Resort: Humble Oil & Ref. Co. v. Woods, Tex.Civ.App., 277 S.W. 152; Cozart v. Crenshaw, Tex.Civ.App., 299 S.W. 499; Moore v. Decker, Tex.Civ.App., 176 S.W. 816; Mid Texas Petroleum Co. v. Colcord, Tex.Civ.App., 235 S.W. 710; Green v. West Texas Coal Mining & Developing Co., Tex.Civ.App., 225 S.W. 548; Grubstake Inv. Ass'n v. Coyle, Tex.Civ.App., 269 S.W. 854; Texas Pacific Coal Co. v. Fox, Tex.Civ.App., 228 S.W. 1021; Steinman Development Co., v. Ritter Lbr. Co., 290 F. 841; Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203; McEntire v. Thomason, Tex.Civ.App., 210 S.W. 563; and other decisions of the Courts of Last Resort of the State of Texas.

"XXXIV. That under the law of the State of Texas, the standard of care due a trespasser is that he shall not be wantonly injured; as exemplified by the following decisions of the Courts of Last Resort of the State of Texas:

"'No duty exists toward a trespasser, except to refrain from wilfully or wantonly injuring him.' Ratteree v. Galveston, etc., R. R. Co., 36 Tex.Civ.App. 197, 81 S. W. 566; Garner v. Harris County Houston Ship Channel Nav. Dist., Tex.Civ.App.,

684

69 S.W.2d 425; Panhandle & Sante Fee Ry. Co. v. Willoughby, Tex.Civ.App., 58 S.W.2d 563."

There is nothing alleged in said articles or agreement which dispenses with the plaintiffs alleging in their petition the distinction between the law of Texas and that of Louisiana, and does not in any sense deal with the law as to licensees. It deals with the right to exclusive possession of the leased premises by defendants and the law of Texas regarding trespassers. This being true, we must necessarily presume that the law of Texas as to licensees is the same as that of Louisiana. To sustain the position of plaintiffs in this contention would be to give too broad an interpretation to the agreement, and we would have to presume that defendants intended by the agreement to broaden the allegations of plaintiffs' petition, since the petition does not contain any allegations to cover the distinction between the laws of the two states, if there is a distinction; and no law to this effect was offered in evidence. We would not be justified in sustaining plaintiffs' contention.

We fully concur in the decision of the lower court wherein it finds the deceased was on the premises at the time of the accident as a licensee and that defendants owed to him only the duty not to wantonly or intentionally injure him, and, since there is no allegation or proof of wanton or intentional injury, plaintiffs' case must fall.

This finding disposes of the case without further discussion of the remaining defenses; however, if we should presume that deceased was on the premises as an invitee, we do think plaintiffs could recover for his death. He was clearly guilty of gross negligence which contributed to his death. Deceased lived for many years in close proximity to two of the largest oil fields in this section of the country. He acted for many years as a deputy sheriff of Caddo parish, which no doubt brought him in close touch with the oil fields. He was a large farmer and a man above the average in intelligence. It is common knowledge that there is danger to those close by in the bringing in of every gas or oil well, and especially is this true when high pressure is placed on the well in an attempt to make it flow. It is unreasonable to think deceased did not have this knowledge. However, whether he did or not, is immaterial. The test is whether he acted as a reasonably prudent man would have, under the circumstances. His knowledge is not the basis on which he is to be judged. We are of the opinion that he did not act as a reasonably prudent man would have when he remained in close proximity to the scene of operations and when high pressure was being applied to this well. We are also convinced from the evidence that several minutes before the accident deceased and all others nearby were warned of the danger and had sufficient time to have saved himself, if the warning had been heeded. He was guilty of contributory negligence, which was a proximate cause of his death, in placing himself in a scene of danger and not getting out of danger after being warned. Therefore, if we should take plaintiffs' view that deceased was an invitee, plaintiffs would still be barred from recovery.

The judgment of the lower court is correct and is affirmed, with costs.