**LYNCH, et ux v. WELAN INVESTMENT CO., et al.**
No. 58 C 10868.

Circuit Court, Dade County.

December 17, 1959.

Killian & Killian, Miami, for plaintiffs.

Brigham, Wright & Rearick, Miami, for defendants.

Olavi M. Hendrickson, City Attorney, for City of Miami.

ROBERT H. ANDERSON, Circuit Judge.

*Opinion, December 17, 1959:* On December 17, 1958 plaintiffs Paul H. Lynch and Sigrund E. Lynch, his wife, filed their complaint to quiet title to all of lot 17, block 3, Fairhaven Amended, a subdivision of Dade County, according to the plat recorded in plat book 8, page 120, of the public records of Dade County.

Plaintiffs link their claim of title to both parts of said lot to a common source, namely, that of H. J. Goebbels, deceased, who acquired title to said lot 17, block 3, in 1925, by deed from the original subdivider, Fairhaven Company. In 1938, H. J. Goebbels conveyed the larger portion of said lot to Samuel B. Harris, and Arthur H. Patten, and their respective wives, from whom by mesne conveyances the plaintiffs acquired their title to this larger part of said lot from Abraham J. Shekter and wife on July 7, 1958.

When H. J. Goebbels conveyed said lot to Harris and Patten in 1938, he excepted from his deed the south 25 feet square, and reserved the same for "right-of-way", for the obvious reason that his own deed from Fairhaven Company reserved an easement in Fairhaven Company over the same "with the right to build wharf or dock or similar structure therefrom into the waters of Bay Biscayne."

In November 1958, some eighteen years after H. J. Goebbels' death, the plaintiffs secured quit claim deeds from his heirs to all of said lot, which they claim vests title in them in the smaller part of said lot, described interchangeably in the pleadings as the south 25 feet square and the southerly 25 feet of lot 17, block 3, of Fairhaven Subdivision Amended, recorded in plat book 8, page 120, of the public records of Dade County, and hereinafter referred to as "said property." In the interest of clarity, a survey of said lot 17, as well as Fair Isle Street, made by Maurice H. Connell & Associates, Inc., consulting engineers of Miami, showing the location of "said property" in relation to the balance of said lot and to Fair Isle Street and Biscayne Bay, is attached to this opinion as exhibit A, and by reference made a part hereof. This court finds, upon the evidence and testimony presented, that the location of "said property" is correctly portrayed on the survey map as cross-hatched by pencil extending from the waters of Biscayne Bay to Fair Isle Street.

The defendant, Welan Investment Co., disclaims any interest in any part of said lot, except "said property", while Burke Properties, Inc., a dissolved Florida corporation, Joseph Weintraub, M. S. Salomon and M. R. Dack, as trustees of Burke Properties, Inc., claim no interest whatsoever in any part of said lot and should be dismissed as parties-defendant. The contest therefore between the parties as far as quieting title to land is concerned, is reduced to a consideration of the conflicting claims of the plaintiffs and the defendant, Welan Investment Co., to "said property."

Welan Investment Co. claims title to "said property" by purchase from Louis E. Kloeber and wife, who by mesne conveyances acquired title thereto from W. A. Rothar, as special master in chancery, appointed December 21, 1938, in a final decree of foreclosure of tax certificates on "said property." The entire record of the foreclosure action bearing circuit court of Dade County chancery no. 54719 was, by stipulation of the parties, introduced in evidence in this cause.

The plaintiffs claim said master's deed is void and attack the final decree of the foreclosure upon which it is based because they assert the holder of the legal title to "said property" was not made a party-defendant in the foreclosure action, and this would render the foreclosure proceeding a nullity.

The answer of Welan Investment Co. to this contention of the plaintiffs is three-fold —

1. That to demonstrate the accuracy of their claim that the legal title holder was other than as alleged in the complaint in the tax foreclosure suit, the plaintiffs would be compelled to go beyond or outside the record of the foreclosure action, which is regular on its face; and that this would constitute a collateral attack upon the final decree long since final by the passage of almost twenty years of time, and this cannot be done.

2. That the foreclosure action properly made all persons known, as well as those unknown, who were interested, or claimed any interest in "said property", parties-defendant, and the final decree was binding upon every such person, including plaintiffs' grantors to "said property".

3. That even if the plaintiffs are correct in their contention that the foreclosure decree did not bind their predecessor in title to "said property", yet the plaintiffs are estopped by laches of almost twenty years delay from asserting such contention, during which time Welan Invest-

ment Co. has in good faith, in reliance upon its title to "said property", expended a large sum of money not only in the purchase of "said property", but in preparing to necessarily use it in connection the development of Fair Isle, which the defendant simultaneously bought.

These contentions of Welan Investment Co. will be examined in their numerical order, but first in the interest of clarity, it is stated at this point that counsel for the respective parties have held their own pre-trial conferences with commendable results. Not only were all exhibits agreed by stipulation to be admitted, subject to any party's right to object to their relevancy or materiality, but certain portions of the answer and counterclaim of defendant, Welan Investment Co., which would otherwise have required much time to prove, were judicially admitted to be correct, unless the same were ruled out of the chancellor's consideration upon the same grounds. Since this did not occur, the following allegations of the answer and counterclaim stand admitted —

1. Paragraphs 2, 3, 4 and 11 of the counterclaim of Welan Investment Co., pages 14, 15 and 18, which read —

2. That the property known as Fair Isle, plats of which were duly recorded in the Public Records of Dade County, Florida, on November 13, 1925, in Plat Book 23 at Page 6, and again on June 15, 1935, in Plat Book 34 at Page 70, is correctly shown as to extent, location, and area on the sketched survey prepared by Biscayne Engineering Company, hereto attached as Exhibit B, heretofore made part hereof by reference; that Fair Isle was purchased by said L. E. Kloeber on April 6, 1922 from the Trustees of the Internal Improvement Fund of the State of Florida, and on that date by their deed No. 17041, said Trustees duly conveyed Fair Island to said L. E. Kloeber, who recorded his deed in the Public Records of Dade County, Florida, on July 13, 1922, in Deed Book 302, at Page 325; that this is the same L. E. Kloeber who duly deeded Fair Island and "said property" to Welan Investment Company by his warranty deed of conveyance of April 6, 1945, duly recorded on April 19, 1945, in the Public Records of Dade County, Florida, in Deed Book 2500, at Page 22, a true copy of said deed being hereto attached as Exhibit G, and by reference made a part hereof.

3. That Welan Investment Company duly succeeded to and became vested with War Department of the United States permit, issued by B. H. Wells, Acting Secretary of War, on July 11, 1927, a true copy of which is hereto attached as Exhibit F; that the War Department and the United States Army Engineers duly recognize the counterclaimant as the owner and holder of said permit, and the same is now valid and outstanding, and presently approve the construction of the bridge proposed by the counterclaimant, plans of which have been duly submitted to and approved by the United States Army Engineers; that the counterclaimant has duly received the approval from the United States not only to build said bridge, substituted for a causeway, between Fair Isle and "said property" in said permit, dated July 11, 1927, as shown on said plans of October, 1958, prepared by Maurice H. Connell & Associates, Inc., but

also to do the dredging and bulkheading necessary to elevate the height of Fair Isle to the minimum requirements of the City of Miami, in accordance with a true copy of said plans being hereto attached as Exhibit I, and by reference made a part hereof; that said plans duly met the approval of the Trustees of the Internal Improvement Fund, who own the intervening bay bottom land between Fair Isle and *"said property"*, located along the route of said proposed bridge, as shown on said plans last mentioned, and also duly met the approval of the County of Dade, on July 10, 1958 and July 2, 1958, respectively; that the Engineering Department of the City of Miami duly gave its approval to the construction of said bridge and the plans therefor on June 10, 1958.

4. That on October 15, 1958, the counterclaimant, being advised by its engineer that it could not proceed with the construction of said bridge and the necessary dredging to elevate Fair Isle to the minimum requirements of the City of Miami, unless they received a permit from the City of Miami, applied to the City Commission of the City of Miami for such permit, and in addition for permission to pave, at its own expense, a portion of Fair Isle Street, duly dedicated to the public on said Plat of Fairhaven, a true copy of which is attached hereto as Exhibit A, and which portion of Fair Isle Street lies easterly of Fairhaven Place as shown on said Plat of Fairhaven, and extends to *"said property."*

\* \* \*

11. That that portion of Fair Isle Street sought to be paved, at the expense of the counterclaimant, had been duly dedicated since the date of said plat of Fairhaven to the Public, and the City of Miami had accepted said dedication, and the same was recognized by all of the former owners of said Lot 17, of Block 3, except the plaintiffs and counter-defendants herein.

## 2. Sub-paragraphs (a), (b), (d) and (f) of paragraph 14 of the answer of Welan Investment Co., pages 8-11, which read —

(a) On March 22, 1924, said Fairhaven Company, under which the plaintiffs claim title, then being the owners of the lands described in the plat of Fairhaven, caused the same to be subdivided into a subdivision of lots, called the subdivision Fairhaven, and caused a Plat thereof to be duly recorded in the Public Records of Dade County, Florida, on March 25, 1924, in Plat Book 8, Page 120, a true copy of which Plat is attached to this Answer as Exhibit A; that said Fairhaven Company then owning all of said Lot 17 of Block 3 of Fairhaven, acquired the ownership of Fair Isle by warranty deed of conveyance from L. E. Kloeber and Bertha Kloeber, his wife, dated November 14, 1922, which deed was duly recorded February 20, 1923, in Deed Book 335 at Page 10 of the Public Records of Dade County, Florida. That on April 6, 1922, by deed of that day duly recorded July 13, 1922, in the Public Records of Dade County, Florida, in Deed Book 302 at Page 325, said L. E. Kloeber acquired title, by purchase of said island, (which became known as Fair Isle), from the Trustees of the Internal Improvement Fund of the State of Florida; that said L. E. Kloeber and Bertha Kloeber, his wife, on November 14, 1922, by their warranty deed of conveyance of that date, duly recorded in the Public Records of Dade County, Florida, on February 20, 1923, in Deed Book 335, Page 10, duly conveyed said Fair Isle to said Fairhaven Company, a Florida corporation; that on March 22, 1921, the State of Florida duly granted a charter to the Fairhaven Company, a copy of which was duly

recorded April 4, 1921 in Book 5 of Corporations at Page 15, and at the time of its incorporation, or shortly thereafter, said Fairhaven Company acquired title to a tract of land which it subdivided into lots and blocks, named it Fairhaven, and caused a plat of the same to be filed in the Public Records of Dade County, Florida, as aforesaid; that at the time Fairhaven Company delivered its said deed to H. J. Goebbels to said Lot 17, Block 3 of Fairhaven, said Fairhaven Company owned both Fair Isle and a large number of lots in Fairhaven, including plaintiffs' said Lot 17, Block 3.

(b) That in order to improve Fair Isle and connect it with the mainland by a causeway extending from Fair Isle to *"said property"*, said Fairhaven Company applied for and received several permits from the War Department of the United States Government in 1925 and 1927 upon applications filed several years before with said War Department, which permits showed the connection between said Fair Isle and the mainland by means of the causeway extending between the same as heretofore alleged, and true copies of said permits are attached hereto in order of time respectively as Exhibits D, E and F, and by reference made a part hereof. That each of these permits were duly recorded in the Public Records of Dade County, Florida, as follows: Exhibit D on October 21, 1925 in Deed Book 778, at page 77; Exhibit E on October 21, 1925 in Deed Book 782, at page 431; and Exhibit F on August 24, 1927 in Deed Book 1133, at page 317.

\* \* \*

(d) That said permits from said War Department have been duly continued by said War Department and the same are valid to date, except that instead of a causeway, the defendant, Welan Investment Company, intends to build a bridge along the route of said causeway from said Fair Isle to said property as its connecting mainland point; this change is in accordance with the request of the War Department so that the flow of water will not be interrupted by a solid fill, or a causeway, but will have free access under the bridge.

\* \* \*

(f) That each instrument in the chain of title under which the plaintiffs claim from the deed from Fairhaven Company to H. J. Goebbels, in the year 1925 to the date of their deed from Abraham J. Shekter and Adela F. Shekter, his wife, of July 7, 1958, duly recorded in the official records of Dade County, Florida, in Deed Book 898, at Page 486, a true copy of which is hereto attached as Exhibit H, and by reference made a part hereof, duly excepted *"said property"* from the conveyance in the same manner as that expressed in the Shekter deed, namely, Lot 17, Block 3, except south 25 foot square, FAIRHAVEN, according to Plat thereof recorded in Plat Book 8, at Page 120 of the Public Records of Dade County, Florida, because of said easement.

Taking up the first point made by Welan Investment Co. in its answer, it is obvious that the attack made by the plaintiffs in their complaint to quiet title to *"said property"* necessarily is a collateral attack upon the final decree entered in the chancery foreclosure action on December 21, 1938. Plaintiffs' complaint charges that the owner and holder of the record title to *"said property"* was other than alleged in the tax foreclosure complaint,

48

and offered to establish such fact by proof dehors the record of the tax foreclosure suit. This constitutes a collateral attack on the final decree of foreclosure which, among other things, decrees that the court rendering the final decree had jurisdiction of both the parties and the subject matter of the cause. The Supreme Court of Florida in Bemis v. Loftin, 173 So. 683 (1937), presents the square holding that a final decree if subject to attack must, after it becomes final, be by a direct and not a collateral attack, the distinguishing characteristic being the necessity of going beyond the record to impeach the decree. In this case, the court said at page 686 —

> A collateral attack on the other hand is an attempt to avoid, defeat, or evade a judicial proceeding by denying its force and effect in some manner not provided by law for that particular purpose. Thus an objection founded on alleged judicial errors, when made in a proceeding authorized by law for avoiding or correcting such judgment on account of such errors, and which will succeed upon the showing of the error, is a direct attack, while an attempt to do the same thing in any other proceedings, of whatsoever nature it may be, is a collateral attack that can only succeed upon showing a want of power in the tribunal whose judicial order, judgment, or decree is thus challenged. Such direct attack can only be pursued within the time, and according to the manner, provided by law. Morrill v. Morrill, 20 Or. 96, 25 P. 362, 11 L.R.A. 155, 23 Am.St.Rep. 95.

> And as all judicial records of orders, judgments, or decrees of judicial tribunals must have their validity tried by an inspection of the record upon which they were arrived at and are a part, any attempt to overturn or overhaul them by evidence dehors in a proceeding not provided by law for that particular purpose, is a collateral attack. A new suit, even in the same court, to set aside a judgment valid on the face of the record of the proceedings, whether for fraud, accident, surprise, mistake, excusable neglect or other cause, not falling within the scope of an equitable bill of review, or an original bill in the nature of a bill of review, is therefore a collateral attack . . . .

> And . . . it is the duty of the courts in general to set their faces against all collateral assaults on judicial proceedings not only because such attacks are frequently devoid of merit, but because the courts of justice should not allow themselves to be brought into dispute by having their forums looked upon by the citizenry as places where mere jugglery and smartness are substituted for justice toward innocent third parties who have become entitled to assume that acting at all, a court whose decree or judgment has been attacked, must necessarily have investigated and determined that it had jurisdiction of the subject-matter of the particular case decided; that by its process, lawful in form and lawfully served, it brought before it the particular parties against whom it undertook to give, and did give, judgment on the record pendent before it at time its decision was entered.

In Newport v. Culbreath, 162 So. 340 (1935), the Supreme Court of Florida said at page 342 — "The record of a court of general jurisdiction imports absolute verity and cannot be

averred against in a collateral proceeding unless there affirmatively appears on the face of the record of such court of general jurisdiction a showing of lack of jurisdiction in the court whose record is in controversy. Van Fleet on Collateral Attack, Chapter 1."

Considering next the second point made by the Welan Investment Co. that, even if the plaintiffs could establish dehors the record that H. J. Goebbels, and not the person alleged in the foreclosure complaint, was the owner of "said property" at the time the tax certificates were foreclosed, then in legal contemplation he was by the allegations of the complaint made a party-defendant, and his interest was barred by the final decree. In support of this contention Welan Investment Co. points to the fact that the tax foreclosure suit includes as parties-defendant all unknown persons interested, or claiming any interest, in "said property"; that the proper allegations for constructive service of process upon such unknown persons were made in the complaint, that the proper order of publication was made and duly published as required by the then applicable law contained in sections 4896, 4897 and 4898 of the Compiled General Laws of Florida 1927. It appears to the court that these sections of the statutory law were duly followed and complied with in the allegations of the complaint in the tax foreclosure suit. Such being the case, the interests of H. J. Goebbels, if any, in and to "said property" were duly adjudicated in the tax foreclosure action under the authority of Balian v. Wekiwa Ranch, 122 So. 559 (1929), Catlett v. Chestnut, 146 So. 241 (1933), and Peters v. Ten Eyck Corporation, 169 So. 865 (1936); see also, McDaniel v. McElvy, 108 So. 820 (1926), and Tibbetts v. Olson, 108 So. 679 (1926). It would necessarily follow, and the court so finds and holds, that the interest of all persons, including that of H. J. Goebbels (if any), in and to "said property" was, under the foreclosure decree in the tax foreclosure action, forever barred and foreclosed and when the special master in said cause, W. A. Rothar, delivered his master's deed to the grantor of Welan Investment Co., by mesne conveyances, he conveyed to that company a new title in fee simple to "said property" which had its source in the state of Florida.

Welan Investment Company's third point, that plaintiffs are estopped by laches almost twenty years after said final decree from attacking the same, is well taken. It is apparent from the evidence in this cause, and the court finds, that Fairhaven Subdivision and Fair Isle, lying opposite and approximately 900 ft. easterly in the waters of Biscayne Bay, were part of the same development project of the original subdivider, L. E. Kloeber, who, through his several corporations, caused the subdivision of

Fairhaven and Fair Isle to be constructed and subdivided. The court finds also that "said property" was intended by the original developer of Fair Isle to furnish access to the mainland by means, first, of a causeway, and later a bridge connecting Fair Isle with the mainland at the point of "said property" lying at the foot of Fair Isle Street. The War Department permits showing this, secured by L. E. Kloeber and Fairhaven Company, appear of public record from the year 1925; the first of said permits being filed on October 21, 1925, in deed book 782 at page 431, and the second of said permits being filed on August 24, 1927, and recorded in deed book 1133 at page 317 of the public records of Dade County. These permits have been introduced in evidence by stipulation of the parties as items 10 and 11 of stipulation A. It is apparent that the United States Corps of Army Engineers Office, both in Miami Beach, and in Jacksonville (see item 32 of stipulation A and item 7 of stipulation B), have in their files ample evidence available to anyone upon inquiry to show that Welan Investment Co. has succeeded to the rights of L. E. Kloeber and Fairhaven Company in and to said War Department permits for the construction of the bridge connecting Fair Isle with the mainland at "said property", and have secured extensions of the same to December 31, 1961. The plaintiffs are chargeable with the information, which they could have secured when they purchased the larger portion of lot 17 from Abraham J. Shekter and wife on July 7, 1958. Not only that, but at the time that the plaintiffs purchased the larger portion of lot 17 of block 3, Abraham J. Shekter and his wife were month-to-month tenants of the defendant, Welan Investment Co., in and to "said property" when they constructed their home, which they sold to the plaintiffs, on the larger portion of said lot in 1956 and Shekter knew that it was the intention of Welan Investment Co. to use "said property" in connection with its contemplated bridge joining Fair Isle. It is obvious that the plaintiffs knew they did not own "said property" and any reasonable inquiry could have disclosed to them that Welan Investment Co. did own "said property" and intended to use the same for the purpose of furnishing the mainland support for the connecting bridge to Fair Isle. It is significant that the two quit claim deeds from the heirs of Goebbels, by which the plaintiffs claim title to "said property", were obtained by them at the cost of ten dollars each, after their objections persuaded the city commission of Miami to deny Welan Investment Company's application for permit to construct the bridge on October 15, 1958.

Welan Investment Co. asserts, and it is not disputed, that they have spent in acquiring Fair Isle and "said property", and in preparation of their plans to develop the same by a connecting

bridge with the mainland at "said property", approximately $100,000, and that they intend to spend approximately an additional $650,000. It is not disputed that unless Fair Isle has mainland access it will be worth only a fraction of the investment which Welan Investment Co. has already invested in its project in the bona fide belief that it was the owner of "said property" and had the right to connect Fair Isle to the mainland by the use of "said property", which project has received the approval in its entirety of the trustees of the internal improvement fund, the County of Dade, the War Department of the United States, and the engineering department of the City of Miami.

Finally, plaintiffs claim that regardless of anything else, they still have the right as owners of one of the lots in Fairhaven Subdivision to use "said property" to gain access to Biscayne Bay under an easement which they assert was created in favor of all lot owners in Fairhaven Subdivision by virtue of the deed from Fairhaven Company to H. J. Goebbels, their grantor by mesne conveyances, of the larger part of lot 17, which deed bears date 21st day of August, 1925.

In Torreyson v. Dutton, 188 So. 805, the Supreme Court of Florida said at page 808 — "We hold that no greater or different title passed by reason of the foreclosure of the tax lien evidenced by a certificate than that which would have passed by a valid tax deed under the certificate. If a valid tax deed had been applied for and had been issued under the certificate, the grantee of the tax deed would have thereby acquired a complete, new, independent grant from the sovereignty which would have barred or extinguished all prior titles and encumbrances of private persons and all equities arising out of them . . ."

In Wolfson v. Heins, 6 So. 2d 858, the Supreme Court of Florida held at pages 860-861 — "Although there is a division of authority on the question of whether the purchaser at a tax sale of land subject to an easement takes the land free from such easement, the difference in the cases seems based solely upon the nature of the tax levy and assessment. Where, as in this State, the levy and assessment is on the realty itself regardless of the existence of estates in it, an easement is destroyed by the tax sale of the servient estate. As Thompson on Real Property, Vol. 5, Perm. Ed., Sec. 2929, page 951, says, 'Where the statute makes the lien for taxes a first claim on the property, superior and paramount to any and all claims and liens whatsoever, and the sale was had in conformity with all the statutory requirements, so as to invest the purchaser with the fee-simple title to the land, even the claims to homestead and the inchoate right of dower

will be divested. Under this rule an easement granted by the owner to a third person will be extinguished by a sale of the servient estate for non payment of taxes.' See, also, Sec. 2920, op. cit. supra."

It would appear to be settled law in this jurisdiction, therefore, that the foreclosure of the tax certificates upon "said property" in said chancery action, resulting in a final decree by virtue of which the special master, then appointed, executed and delivered his master's deed to the grantor of Welan Investment Co., by mesne conveyances, operated to extinguish any and all easements theretofore existing upon "said property".

It appears, and the court so finds, that Welan Investment Co. is the owner in fee simple of "said property"; further, that the plaintiffs are estopped by laches from claiming otherwise, and their attempt to do so by this action constitutes a collateral attack upon the validity of the final decree of foreclosure of the tax certificates entered in chancery cause no. 54719 on December 21, 1938, which is not permitted by the applicable law under the facts and circumstances of this case. Therefore, the complaint filed by the plaintiffs against the defendants in this cause should be dismissed with prejudice.

There remains for consideration whether Welan Investment Co. should be granted the relief prayed for by it in its counter-claim against the plaintiffs and against the City of Miami. At the final hearing of this action, the counter-defendant, City of Miami, through its counsel of record, stated that the city's position was that Welan Investment Co. should have the permits denied it by the city commission of Miami, in their resolution no. 30321, if the court should decide that it was the owner of "said property". The frank statement by counsel of the city's position is helpful to the court, but no reason appears why it should be necessary for Welan Investment Co. to reapply to the city of Miami for the permits denied it by resolution no. 30321. It is contended by the city that the resolution was passed under the provisions of c. 57-362, Laws of Florida. Section 4 of said chapter specifically provided that no permit, as that denied by resolution no. 30321 of the City of Miami, should be refused "without a valid reason." It seems clear on the authority of Mahler v. Eby, 264 U.S. 32, 44 S. Ct. 283, 68 L. Ed. 549, that this provision of c. 57-362 requires the reason for refusal of the permit to be stated on the face of the resolution, and the failure to do so renders the resolution void.

In view of the position of the city stated by its counsel of record, and the finding of the court that resolution no. 30321 is void, it is apparent to the court that the relief prayed for in the counterclaim of the Welan Investment Co. should be granted, not only against the City of Miami, but against the plaintiffs to this cause. Therefore, this court so finds, and it is the order of this court as follows —

That the plaintiffs' complaint should be dismissed with prejudice.

That resolution no. 30321 of the City of Miami is void.

That the counter-defendants, Paul H. Lynch and Sigrund E. Lynch, his wife, have no right, title or interest in and to "said property" which will prevent Welan Investment Co. from using the same for access by its bridge from its said Fair Isle to the mainland.

That Welan Investment Co. is entitled to have the permits which were denied it by resolution 30321 of the City of Miami, and the counter-defendant, City of Miami, be and it is hereby mandatorily commanded and enjoined to grant the same to Welan Investment Co.

That an injunction should be entered against the counter-defendants, Paul H. Lynch and Sigrund E. Lynch, his wife, and the City of Miami, enjoining and restraining them from interfering with or preventing Welan Investment Co. from connecting "said property" with a bridge to Fair Isle, from paving Fair Isle Street, at its own expense, from South Bayshore Lane to "said property", and from using "said property" as the means of connecting its bridge to be constructed from Fair Isle to "said property", according to the plans and specifications of Maurice H. Connell & Associates, Inc., as approved by the aforementioned governmental bodies.

That a final decree shall be prepared and submitted to the court in accordance with this opinion.

*Final decree:* This cause having come on before the court on final hearing, after due notice to all parties, and the court having personally heard the testimony of the parties and received their evidence, considered their briefs, and rendered an opinion which is made a part of this final decree by reference, it is considered, ordered, adjudged and decreed —

That the complaint filed by the plaintiffs, Paul H. Lynch and Sigrund E. Lynch, his wife, is dismissed with prejudice.

That Burke Properties, Inc., a dissolved Florida corporation, and Joseph Weintraub, M. S. Salomon, and M. R. Dack, as trustees of Burke Properties, Inc., are dismissed as parties-defendant to this action.

That Welan Investment Co. is the owner in fee simple of the southerly 25 feet, also referred to as the south 25 feet square, of lot 17 of block 3 of Fairhaven Amended, a subdivision located in Miami, Dade County, Florida, according to the plat thereof recorded in plat book 8, page 120, of the public records of Dade County, Florida.

That the counter-defendant, City of Miami, be and it is hereby mandatorily enjoined and ordered to grant to Welan Investment Co. permits to construct pavement and sidewalk along the extension of Fair Isle Street from South Bayshore Lane to the shore of Biscayne Bay, and a concrete bridge from the shore of Biscayne Bay to Fair Island, and to bulkhead Fair Island, and also in addition thereto to excavate the necessary fill from adjacent bay bottom, all as shown on preliminary plans prepared by Maurice H. Connell & Associates, professional engineers, immediately upon posting performance bonds by the said Welan Investment Co. with the City of Miami covering completion of the work as shown on said plans. That the counter-defendants, Paul H. Lynch and Sigrund E. Lynch, his wife, and City of Miami, be and they are hereby each severally restrained from interfering with or preventing Welan Investment Co. from performing each and every act mentioned in this decree, including the elevation of Fair Isle, connecting the same by bridge to the mainland at the location of said 25 feet square of said lot 17 of block 3, and from paving Fair Isle Street from South Bayshore Lane to the shore of Biscayne Bay, including the construction of sidewalk, in accordance with plans and specifications prepared by Maurice H. Connell & Associates.

That the court reporter's charges in the sum of $139.25, for taking down and transcribing the final hearing of this cause before the court are taxed against Paul H. Lynch and Sigrund E. Lynch, his wife; that in the default of the counter-defendants, Paul H. Lynch and Sigrund E. Lynch, his wife, to pay said costs, the same shall be paid by Welan Investment Co. and in that event the clerk of the court is ordered to issue execution for said costs in favor of Welan Investment Co. against the counter-defendants, Paul H. Lynch and Sigrund E. Lynch, his wife.