FRUGÉ, Judge ad hoc.
Plaintiff, Ennis Thomas, instituted suit in tort against Our Lady of the Lake Hospital, Inc. and its insurer, The Travelers Insurance Company, for damages sustained when he was allegedly struck on the head by an oxygen cylinder cap as he entered, in the status of an invitee, a rest room on the defendant hospital’s premises. Buquet Surety Corporation, were joined as party defendants inasmuch as the construction firm was performing certain alterations and repairs near the scene of the accident at the time.
In his petition, as amended, plaintiff attributes his alleged injuries to the negligence of the defendants and/or their agents and/or employees in placing an oxygen cap in such a position in a rest room so that it could and did fall; in negligently handling and storing oxygen tanks; and in carrying on construction, maintenance and *131 repairs in a negligent manner. Plaintiff specifically charged the defendánt hospital with negligence in failing to adequately inspect its premises. Plaintiff entered an alternative plea urging the Court, in the absence of any specific finding of negligence attributable to the defendant, to apply the doctrine of res ipsa loquitur in awarding a judgment in his favor.
At the time of the alleged accident, plaintiff was an employee of the Zetz 7-Up Bottling Company and thereafter, obtained workmen’s compensation benefits from his company’s insurer. Said insurer, Mas-sachusets Bonding & Insurance Company, filed a petition of intervention in the instant suit to recover the amount of compensation and medical benefits paid by it to plaintiff.
The defendants, Our Lady of the Lake Hospital, Inc. and The Travelers Insurance Company, answered plaintiff’s petition, as amended, denying the occurrence of the alleged accident and injury and specifically denied that the alleged accident, if any such . accident did occur, was caused by a negligent act or omission to act attributable to either of them or any one for whom they could be held legally responsible. Further answering the allegations of plaintiff’s petition, as amended, said defendants entered an alternative plea alleging that in the event either of them, or any of their agents or employees, were guilty of any negligence proximately causing the said accident, then, and in that event, any such acts of negligence were in the nature of “Horseplay” and were done outside the course and scope of employment by any of said defendant’s agents or employees. Lastly, and in the further alternative, said defendants asserted the affirmative defense of contributory negligence.
There was trial on the merits after which the trial judge rejected plaintiff’s demands on all defendants and dismissed his suit from which a devolutive appeal was perfected. The main point on which the judge dismissed this suit was that the plaintiff was not an invitee to that portion of defendant’s hospital premises where the alleged accident supposedly occurred.
The trial judge said:
“Barksdale and LeBlanc (Eugene Barksdale and W. P. LeBlanc, individually and doing business as Barks-dale and LeBlanc, a commercial partnership) were made defendants in this case inasmuch as they were at that time constructing an addition to Our Lady of the Lake Hospital.
“On the trial of the case the evidence failed to show who, if anyone, placed the metal object above the door entrance, which allegedly fell on the Plaintiff when he opened the door to enter the restroom. Certainly there is no evidence to show that an employee of Barksdale and LeBlanc placed the object above the door entrance, if it were so placed. Therefore, I am of the opinion that there is no liability whatever on the part of the defendants, Eugene Barksdale and W. P. LeBlanc, individually and doing business as a commercial partnership, Barksdale and LeBlanc, or their insurer, The National Surety Corporation.”
A careful study of the testimony reflects the correctness of this ruling. We see no manifest error.
A careful study of the transcript reveals among others the following pertinent facts: Plaintiff, Ennis Thomas, on the morning of July 29, 1957, while in the employ of the Zetz 7-Up Bottling Company, accompanied a supervisor to Our Lady of the Lake Hospital to replenish their soft drinks. After loading the 7-Up box, he, the plaintiff, requested and obtained directions from a colored porter as to the location of a colored rest room. He testified that upon entering the rest room door something struck him on the head and he was rendered senseless for approximately 20 minutes. He further testified that the falling *132 object was a metal cap and that it fell from over the door and knocked him to his knees, and that the metal object remained on his head until he shook it off. Then he further testified that he staggered back to the colored porter and was physically assisted to a nurse’s office. While he further testified that as a result of the blow plaintiff alleged that he experienced headaches and has continued to experience blind spells and severe headaches, the district court must have entertained serious doubt as to the value of plaintiff’s testimony.
The facts further show that while the plaintiff made bi-weekly deliveries to this hospital for the entire year immediately preceding this alleged accident, that he never did use a colored bathroom there.
In testing the credibility of the plaintiff, counsel for defendant cross-examining him on various points in which the plaintiff denied back-aches, temporary blindness, blind staggers, epileptic fits, and specifically denied any prior accidents. He further denied that he and his wife had been separated for seven or eight months and it was further brought out in the testimony that in a deposition given by him four days prior to the trial, he affirmatively stated that he, his wife and four children were living together at 2029 Caroline Street, Baton Rouge. He further stated that subsequent to the accident, he worked for J. B. Ganier, and experienced blind staggers in the presence of said employer. We are of the opinion that the defendant successfully impeached and discredited the testimony of plaintiff Thomas. His wife Mamie Lee Thomas testified that she had not lived with him for eight months prior to the trial; that she had caused him to be arrested several times for criminal nonsupport of family; that her husband sustained several injuries of a serious nature prior to July, 1957; that he had complained to temporary blindness after being hit over the eye by a 2 x 4; and that he had sustained an epileptic fit in her presence. Further, J. B. Ganier, a saw mill owner, stated that plaintiff had worked for him for three months in the fall of 1958 and that he had done so under his direct supervision and that at no time he complained of dizzy spells or headaches. He further contradicted Ennis Thomas in two or three other points at issue. Plaintiff worked under the supervision of Mr. John Wellbanks thereafter from April through the middle of May 1959 at the Southern Granite Company and at the Royal Poole Company. Claimant worked with a hand shovel, ran a mixer and assisted in loading and that he was a good worker and that at no time complained of a headache or dizzy spells. In addition to that a report of the Baton Rouge General Hospital was filed to show that Ennis Thomas was admitted at said hospital on July 15, 1951, for injuries sustained when he was struck over the left temple by a 2 x 4. At that time plaintiff complained of pain in the head, weak spells and inability to see from his left eye.
We therefore conclude that the testimony of Mamie Lee Thomas, J. B. Gamier and John Wellbanks together with the Baton Rouge General Hospital report serves to completely impeach the testimony of Ennis Thomas and to say the least seriously impair the value of his testimony in this record.
Plaintiff relies strongly upon the contention that the doctrine of res ipsa loquitur applies herein. The jurisprudence reflects as follows:
In the case of Dorman v. T. Smith & Son, Inc., 1953, 223 La. 29, 64 So.2d 833, at page 835, our Supreme Court set forth the rule relative to the applicability of the doctrine of res ipsa loquitur. Therein, it was stated:
“ * * * in order for the rule to apply, it must be shown that the circumstances attending the accident were such as to create inference of negligence on the part of defendant’s employee, that the control and management of the instrumentality was exclusively vested in defendant and that plaintiff was not in a position to show *133 the particular circumstances which caused the instrumentality to operate to his injury whereas the defendant, being in such a position, possessed superior knowledge or means of information as to the cause of the accident. * * ‡»
“ * . * * If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply.” 64 So.2d at pages 834, 835.
Similarly, and in the case of Larkin v. State Farm Mutual Automobile Ins. Co., 1957, 233 La. 544, 97 So.2d 389, at pages 391, 392, Chief Justice Fournet remarked:
“ * * * All that is meant by res ipsa loquitur is ‘that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant’s duty.’ ”
“Many instances are noted where the doctrine, though invoked, has no application; e. g., it is obvious that when there is, in addition to evidence disclosing the physical cause of the accident, either direct or circumstantial evidence which conclusively repels any inference of negligence that might otherwise arise, the plaintiff is deprived of any practical advantage from the rule. Nor is a resort to res ipsa loqui-tur warranted in cases * * * where the opposing parties or their witnesses are present and direct testimony as to the cause of the accident is available; if: if: if: »
In the application of the above rule we are of the opinion that the doctrine of res ipsa loquitur is inapplicable here. There is nothing in the record to indicate that if the cylinder cap was placed atop the door as contended by plaintiff, it was so placed by an employee of defendant acting within the scope of his employment. We observe that at the time in question that both hospital and construction employees were in a general area of the alleged accident scene on the day in question.
In connection with this accident, the police were informed and a thorough investigation was made by the police to ascertain who was responsible, if any one, for the alleged accident and it is seen that the plaintiff had equal means of information as to the identity of the responsible party as did the defendants. In summary would we approach it from the view the evidence shows it is most unlikely the accident occurred as related by plaintiff whose version is unsupported by independent corroborative evidence. Plaintiff was the only one who saw the object on the door or in the room. A hospital employee who visited the rest room approximately 10 minutes prior to the alleged accident did not see a cap. Plaintiff’s testimony shows he did not fully enter the room but remained in the door either on his knees or sprawled out on the floor. Neither did plaintiff pick up the cap. Investigation made within a few minutes of occurrence of the alleged accident failed to disclose presence of a cap in the room— only cap found was one on a flower box near the door and on the outside of the rest room. Plaintiff’s testimony shows that he did not pick up the cap after the accident. It further appears there was no shelf or ledge above the door on which an employee could have placed the cap for purpose of storing same. We are therefore of the opinion that the doctrine of res ipsa loq-uitur is not applicable here.
*134 As previously noted hereinabove, the trial judge held that the plaintiff was not an invitee to that portion of the hospital premises where the so-called accident allegedly occurred. The record disclosed and it was definitely shown therein that the rest room in question was maintained for the exclusive use of the colored male hospital employees and that the plaintiff had never even used the rest room or even been to that portion of the hospital premises on any of his some one hundred visits. We believe pertinent here Corpus Juris Volume 45, Verbo Negligence, Page 835 [See also 65 C.J.S. Negligence § 48] as stated in the case of Venezie v. Salles, La.App.1937, 176 So. 407:
“ ‘A customer of a store or place of business retains the status of an invitee while going to, returning from, or making use of, a toilet, which is maintained for the use of customers, or which customers are ordinarily permitted to use. * * * But the proprietor of a store or place of business oives to customers no duty zvith respect to the safety of a toilet which is maintained solely for the use of employees, or which a customer is permitted to zdsit merely as •an accommodation on a particular occcusion, and even frequent permissive use by customers of a toilet not maintained for customers has been held not to give a customer who is permitted to use it the status of an invitee.’ ” At pages 408-409. (Italics supplied.)
The only duty owed by the hospital to a licensee is the duty of warning the licensee of latent dangers of the premises if actually known by the occupier. (Emphasis supplied.) See Alexander v. General Accident Fire & Life Assur. Corp., La.App. 1957, 98 So.2d 730, 732. There is no evidence in this record to show that the defendant hospital or any of its agents or employees knew that any trap had been set by placing an oxygen cylinder cap on the rest room door sill so that it would fall on any one attempting to enter the rest room. As was the case in Vargas v. Blue Seal Bottling Works, 1930, 12 La.App. 652, 126 So. 707, the status of the user of the premises may change and one who enters as an invitee may lose such status and become merely a licensee before leaving the premises. In his book, Prosser on Torts, 1955 edition, William L. Prosser, an eminent authority in the field of torts, commented, in Section 78, p. 458 thereof:
“The special obligation toward invitees exists only while the visitor is upon the part of the premises which the occupier has thrown open to him for the purpose which makes him an invitee * * *. If a toilet or telephone is provided and maintained for the use of customers, as is usual in theatres or department stores, the customer is an invitee when he makes use of it; but if it is kept for the private use of the occupier and his employees, as is often the case in the corner drugstore and the butcher shop, he is at most a licensee * * (Emphasis supplied.)
Even admitting for the sake of argument that there was a hidden trap, it is clear that Ennis Thomas occupied at most the status of a licensee at the time of the alleged accident.
It is argued that plaintiff was an invitee at the time of the alleged accident. The record does not show that the defendant hospital was guilty of any breach of duty owed to the plaintiff.
As stated in the case of Alexander v. General Accident Fire & Life Assur. Corp., supra:
“An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the dan *135 ger.” See also Lindsey v. Travelers Indemnity Co., La.App.1959, 111 So.2d 153.
Also, and as stated in the case of Regenbogen v. Southern Shipwrecking Corp., La.App.1949, 41 So.2d 110 (quoting from Corpus Juris, Volume 45, Verbo Negligence [See also 65 C.J.S. Negligence § 45]):
“ * * * As, however, the owner or occupant is not an insurer of the safety of invitees, he is not required, at his peril, to keep the premises absolutely safe, but the measure of his duty in this respect is reasonable or ordinary care, and in determining whether such care has been exercised it is proper to consider the uses and purposes for which the property in question is primarily intended.” At page 112.
Similarly, and as stated by William L. Prosser, in his book, Prosser on Torts, 1955 Edition, Section 78:
“The possessor is required to exercise reasonable care to warn the invitee, or to make the premises safe for him, as to dangerous conditions or activities of which the possessor knows, or those which he could discover with reasonable care. The obligation exists only while the visitor is upon part of the premises to which his invitation extends.”
Plaintiff stresses the point that defendants were negligent in handling and storage of oxygen cylinders and with failure to adequately inspect the hospital premises. The facts are, however, that hospital procedures required the stationing of oxygen cylinders with cylinder caps throughout the hospital for emergency reasons and we fail to see that the mere storage of said items in various parts of the hospital constituted any breach of duty to the plaintiff. To say the least, an oxygen cylinder cap in itself is not a dangerous item. It weighed less than three pounds and could not be more dangerous than any other object such as a loose brick or soft drink bottle. The evidence is conclusive that there were no shelves or ledge in the said rest room other than the door sill itself. Hence, the hospital could not be charged with negligence for storing a cap in a rest room. Also in view of the fact that a trusted hospital employee of some 18 years standing visited the rest room in question within ten minutes prior to the happening of the alleged accident and did not find any cap poised on the door sill, it is apparent that the hospital cannot be charged with any failure to use reasonable care in discovering a hidden dangerous condition. We are therefore convinced that the hospital did not violate any duty that it may have owed to the plaintiff, had he been an invitee.
Taking the last alternative point advanced by defendant wherein he invokes a rule holding that a master is not liable for injuries to third persons caused by pranks, jokes or playful conduct of a servant, we agree with counsel that should we concede for purposes of argument only that an oxygen cylinder cap was placed in a rest room door sill by a negligent employee of the defendant hospital or by one of the construction workers that the above announced rule is applicable. The basis of this rule is that in perpetrating the prank, joke or playful conduct, the servant departs from the line of his duties and goes outside the scope of his employment.
In support of this contention counsel cites 9 Negligence and Compensation Cases Annotated, Section 50. It seems like our Louisiana courts adhere to this theory as reflected in the case of Muro v. Norman S. Corp., La.App.1956, 85 So.2d 688, wherein the court held that in the absence of a showing that an employer had been negligent in the selection of an alleged assailant as an employee, no recovery could be had for injuries allegedly sustained by plaintiff in a fight with a fellow employee on the employer’s premises, resulting from personal differences with which the employer had no concern. It has been held that when an employee goes outside of the course and *136 scope of his employment and acts with malice in causing damage, his employer is not liable. See Thompson v. Copeland, 6 Orleans App. 403; Moore v. Day Builders Supply Co., 3 La.App. 575; Ruth v. Royal Indemnity Co., La.App., 83 So.2d 520.
The most thorough study of the record convinces us that the trial judge in dismissing this suit was not manifestly erroneous and consequently we will not disturb his judgment.
For the above and foregoing reasons, the judgment of the District Court is affirmed, without cost to defendants.
Affirmed.